Mrs. Charles H. READ, Independent Executrix, Appellant,

v.

Mrs. Winnie CARVER, Appellee.

No. 3300.

Court of Civil Appeals of Texas. Waco.

Oct. 13, 1955.

Rehearing Denied Nov. 3, 1955.

her father to defendant, Mrs. Carver. Her action is grounded on quantum meruit.

The jury found substantially (1) that there was an agreement between Bert Dummit and Mrs. Carver that he would not make any charge to her for his services as an attorney concerning the negotiations for the cancellation of the proxy on the Carver stock and the collection of money due her from The Cooper Company; (3 and 4) that the checks for $800 and $250 issued and delivered by Mrs. Carver to Dummit were in full payment of any services rendered by Dummit in the matter in question, and that he accepted such checks in full payment of the services so rendered.

On the verdict of the jury the court decreed that the independent executrix take nothing, to which the plaintiff excepted and gave notice of appeal to this court. In the court's judgment there is this recital: "* * * and it appearing to the court that the plaintiff has admitted that the sum of $363.28 is due and owing from the estate of Bert Dummit, deceased, to defendant and cross-plaintiff, Mrs. Winnie Carver * * * It is therefore ordered, adjudged and decreed by the court that the defendant have judgment against Mrs. Charles H. Read, Independent Executrix of the Estate of Bert Dummit, deceased, for the sum of $363.28, with interest and costs." This part of the judgment is not challenged.

The judgment is here assailed on one point: "In a suit by the executrix of a deceased attorney for legal services rendered by the attorney, where the defense was that such services were rendered gratuitously because the attorney was the brother-in-law of the defendant and was very fond of her, the Court erred in excluding from the consideration of the jury declarations of the deceased as to his intentions to charge for such services and his hostile feelings towards his sister-in-law and towards his wife, the sister of the defendant, particularly in view of the Court's admitting evidence offered by the defendant that the attorney stated he would make no charge for his services and evidence that

Robert Lee Guthrie, David C. McCord, Jr., Dallas, Conway, Scharff & Walker, Waco, for appellant.

Witt, Terrell, Jones & Riley, Waco, for appellee.

TIREY, Justice.

Mrs. Read, independent executrix of the estate of her father, Bert Dummit, brought this suit to recover attorney's fees for legal services rendered during the lifetime of

the deceased was very fond of the defendant and her sisters." (There is no complaint that the court erred in admitting evidence offered by the defendant that the attorney stated that he would make no charge for his services and that the deceased was very fond of defendant and her sisters).

Appellee's counterpoints are substantially: (1) since the finding of the jury in answer to Issue 1, based on direct evidence that Dummit had agreed with Mrs. Carver to make no charge for his services, plaintiff's case on quantum meruit must fail because any testimony indicating what may have been a private intention to attempt to charge for services becomes immaterial, and consequently there could be no reversible error in excluding the tendered hearsay testimony of the deceased's self-serving declarations purporting to show the private state of deceased's mind with reference to the matter before the court; (2) the testimony tendered by appellant and excluded by the court consists of hearsay and self-serving declarations made outside of the presence and hearing of the appellee, and by reason thereof were inadmissible and correctly excluded; (3) since the jury found in answer to issues 3 and 4 that the check for $800 and the check for $250 paid by appellee to deceased were tendered to deceased and accepted by him in full payment for services he rendered, the appellee was entitled to judgment on such findings alone.

A statement is necessary. The deceased was married twice and to his first marriage were born six children, Mrs. Charles H. Read, the plaintiff here being a daughter. Mr. Dummit was a court reporter for many years and in 1925 he was licensed to practice law. After the death of his first wife he intermarried in 1931 with a sister of Mrs. Carver, the defendant. Mr. Dummit passed away in January, 1952, and Mrs. Read was appointed independent executrix of his estate and she brought this suit in its behalf. Mrs. Carver lost her husband in the year 1938, and it appears that the whole of his estate passed to her under her husband's last will and testament. Among other property she had 1,105 shares of the common stock of The Cooper Company, and subsequent to the death of Mr. Carver the stockholders became involved in a controversy for the control of the corporation which ended in litigation, the facts of which are not pertinent here. It appears to be without dispute that after the death of Mr. Carver, a Mr. Peters, brother-in-law of Mrs. Carver, took over the management of her business, and after Mr. Peters' death, Mr. Dummit and Jack Eastham, a nephew, undertook to aid and assist Mrs. Carver in the management of her estate. Evidence was tendered to the effect that Mrs. Carver had given a proxy for five years on her stock, and that she decided she would like to get the stock released from this proxy and Mr. Dummit rendered some service to her in this behalf and she got the stock released from the proxy and the stock was sold at a price satisfactory to her, and at the same time he collected a demand note that she held against The Cooper Company, and The Cooper Company also paid to her some funds due and owing her on an open account, she having collected for the stock, the note and an open account, amounting to something over $200,000. Testimony was tendered to the effect that Mr. Dummit told Mrs. Carver that he would not charge her a fee for these services, but after the matter was closed he accepted two checks from her, one for the sum of $800 and the other for the sum of $250, and the jury's findings were to the effect that these checks were accepted by Mr. Dummit in full settlement and satisfaction of the services he had rendered to Mrs. Carver. The sufficiency of the evidence to sustain the jury's findings on these issues is not assailed.

In appellant's brief we find this statement:

"The services that Mr. Dummit rendered Mrs. Carver pertained to her interest in the Cooper Company at Waco, Texas. She owned 1105 shares of the common stock in such company and had an opportunity to sell such stock for $110,500.00. She had given E. C. Barrett a proxy to vote her stock for

5 years from 1949. The sale of the stock for $110,500.00 was conditioned upon the cancellation of the proxy. Mr. Dummit briefed the legal questions involved, negotiated for the surrender of the proxy and prepared pleadings asking for a cancellation of the proxy and an injunction against its exercise. The proxy was cancelled, Mr. Dummit completed the sale and collected $110,000 which was deposited to Mrs. Carver's credit in a Waco bank, and at the same time he collected for Mrs. Carver from The Cooper Company $75,000. due Mrs. Carver on a demand note, and an additional amount on deposit of about $30,000. The total amount collected in addition to the $110,000. was $106,363.28 * * * (no suit was filed).

"Mrs. Wolf would have testified before the jury, if permitted to do so by the court, and her evidence was offered to show the intent of the deceased with respect to charging for his services that her father told her about the fee he was going to charge. He said it would be worth 33⅓%. Mrs. Wolf helped him with the stenographic work and while dictating to her he made the statement about the fee more than once. Stella Williams, sister of Mrs. Carver, and the other sisters would call him. He was so harrassed he said it ought to be worth 50%. They nagged him to death constantly. While my father was in the hospital he asked me to call a lawyer to the hospital. He asked me to get his brief case with all the papers and bring it to the hospital. He asked me to call a lawyer to the hospital to consult with him. He asked to consult with a lawyer about collecting the fee from Mrs. Carver and about a divorce. He called Searcy Johnson. He is a Dallas lawyer. My father stated from the money he expected to earn in this case he was going to do some of the things he had always wanted to do. He was going to quit working

so hard. He was going away where he could have a little peace. He asked me if I would go to Europe with him. He thought he might do that."

Mrs. Odie Johnson, a trained nurse who had attended Mr. Dummit during his last illness was tendered as a witness and, if permitted to do so, would have testified to certain conversations she overheard between Mr. Dummit and his wife while he was in the hospital. "A. Well, she asked him why he wanted to sue for a divorce, and she said she thought the idea of him charging Winnie a fee was absurd, that he knew that she would get a large sum of the estate that Winnie would leave, and she didn't think that he should do it. She also told him that when his half of the community property was gone that he would have to look to his children, that she would not help him with any of her half of the community property, that she just couldn't do it, and that made him very upset; it hurt him * * * Well, he sobbed, and he had a hard chill; I had to put hot water bottles around him, and get blankets for him; * * * Well, he told me what a nice fee he was expecting, and that he wanted to go to California; he told his brother that. * * * He asked me would I go to California with him as a nurse, on a plane, and that he would pay my transportation. That was his plans, he wasn't able to go alone, and I told him 'Yes.' He said, 'as soon as the case is settled, or, as soon as his fee was collected, he wanted me to take him out to Mrs. Read's in California,' and that was his plans. He wanted me to go as his nurse. He said he would buy me a roundtrip ticket on the plane." The court sustained objections to the foregoing testimony on the ground that it was self-serving and hearsay.

Much similar testimony was tendered by the appellants for the purpose of showing that it was the intention of deceased to charge Mrs. Carver a substantial fee and the pleadings on which the appellant went to trial alleged that a reasonable fee was $50,000 and prayed for such relief.

There is no testimony in this record that Mr. Dummit ever made any written demand on Mrs. Carver for any fee, nor is there any evidence in the record that he made any oral demand on her for a fee of one-third or any other amount, nor to indicate that it was Mr. Dummit's view that his fee should be one-third or 50% of the amount collected, and the only evidence tendered to the effect that Mr. Dummit had such idea was by the witnesses tendered who were ready and willing to testify as to such declarations made to them by Mr. Dummit out of the presence of Mrs. Carver.

We think it is well settled in Texas that "statements made by a party against his interest are admissible, but any statements made by him which are self-serving and purport to bolster his own rights are not admissible, and the fact that the party making them is dead does not change the rule." See Chenoworth v. Flannery, Tex.Civ.App., 202 S.W.2d 480, point p. 482, no writ history. See also cases there cited. In American General Ins. Co. v. Jones, 152 Tex. 99, 255 S.W.2d 502, point p. 505, we find this statement of the rule: "The death of the declarant of hearsay does not in itself render admissible testimony which would otherwise be excluded. McCormick & Ray, Texas Law of Evidence, Sec. 359, p. 447."

While the rule here cited is general, we believe that it is applicable here to all of the testimony excluded by the trial court. We have carefully read this testimony excluded and complained of by the appellant and we think it comes under the general rule here stated. Nor do we find anything in this record to show that the testimony excluded comes under the exceptions to the rule announced by this court in Prater v. Traders & General Ins. Co., Tex.Civ.App., 83 S.W.2d 1038; Southland Life Ins. Co. v. Greenwade, Tex.Civ.App., 143 S.W.2d 648, affirmed 138 Tex. 450, 159 S.W.2d 854; Jameson v. Zuehlke, Tex.Civ.App., 218 S.W.2d 326. We believe that a reading of each of these cases will sustain our view.

Appellant in her brief says substantially that appellee failed to plead payment and that by reason thereof the issues submitting plea of payment should not have been submitted to the jury. We overrule this contention.

In defendant's third amended original answer, in paragraph 21, we find the following averment:

"(h) that the checks for $800.00 and $250.00 were tendered to Bert Dummit as gifts in appreciation for gratuitous services;

"(i) that Bert Dummit accepted the checks for $800.00 and $250.00 as gifts in appreciation for gratuitous services;

"(j) that Bert Dummit knew, or should have known, that this defendant, Mrs. Carver, believed that his services would be rendered without charge therefor; yet, he failed to advise her that he intended to charge for such services, if he had such intention;

"(k) that Bert Dummit · failed to make any demand or request any payment from Mrs. Carver for his services and that he had no good cause for failing to do so."

We quote in part paragraph 22:

"Defendant would further show to the court that the $1050.00 given by this defendant to Bert Dummit constituted ample and liberal payment for all the services that he performed * * *."

There was no exception leveled to the foregoing averments. The general rule as announced in Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, points 1 and 2, 141 A.L.R. 50 is to the effect that in the absence of special exception the pleading will be liberally construed in the pleader's favor. We think defendant's pleadings were sufficient to tender the issue of payment.

Finding no reversible error, the judgment of the trial court is affirmed.