Garlan H. GREEN, Appellant,

v.

Olin BLANKS et al., Appellees.

No. 10804.

Court of Civil Appeals of Texas.

Austin.

Nov. 23, 1960.

Rehearing Denied Jan. 11, 1961.

Dell & Perry Barber, Colorado City, for appellant.

E. M. Cage, Dallas, Wagstaff, Harwell, Alvis & Pope, Abilene, Upton, Upton, Baker & Griffis, San Angelo, Dickey & Dickey, Robert Lee, Neill, Blanks, Lewis & Logan, San Angelo, for certain appellees.

Turpin, Kerr, Smith & Dyer, Midland, for appellees Crescent Oil & Gas Corp. and others.

ARCHER, Chief Justice.

This is a suit in trespass to try title involving the fee title to the Mary A. Green Survey, abstract 872, Coke County, Texas, containing 160 acres more or less. The plaintiff is Garlan H. Green, individually and as agent or trustee for 54 other heirs or successors in interest of Mary A. Green, deceased. The defendants are Olin Blanks, W. H. Blanks, Jane Brown and Ruth Blanks Matlock who are the heirs and devisees of W. C. Blanks, deceased, and numerous other defendants who are the assigns of the estate of W. C. Blanks, deceased, to the oil and gas leasehold title and to an undivided interest in the mineral and royalty interest under the land.

The plaintiff pleaded title and dispossession in accordance with the trespass to try title practice and also sought recovery for the value of oil and gas produced from the premises for almost six years prior to trial of the case. The defendants all pleaded the five, ten and twenty-five year statutes of limitations and the two year statute of limitations on the claim for value of oil and gas, and some of the defendants filed cross actions for valuable improvements in the event of a recovery by the plaintiff.

The case was tried to a jury and the court submitted to the jury, in four issues together with appropriate instructions, the question whether the five year, ten year, and two twenty-five year statutes had run. The jury found in favor of the defendants on the five year, ten year and twenty-five year (Art. 5519a) statutes, and did not answer the five issues involving good faith improvements because such issues had been conditioned upon a negative finding on all of the limitation issues. The trial court entered its judgment in favor of the defendants based on the jury verdict finding for the defendants on the five, ten and twenty-five year statutes, and the plaintiff has appealed.

The appeal is based on 27 points assigned as error and points Nos. 1, 2, 3, 4 and 5 may be grouped together and are to the effect that the court erred in overruling plaintiff's motion for an instructed verdict because the undisputed evidence shows that plaintiff, individually and as agent for the other heirs of Mary A. Green is the owner of the land sued for; that W. C. Blanks and his estate were at all times tenants either by agreement or by consent, which was nev-

er repudiated, either by giving actual or constructive notice and all of the defendants are estopped to assert the statutes of limitations; that the defendants never at any time abandoned such possession under a landlord-tenant relationship and made a new and independent adverse re-entry, and that if there was any evidence tending to show that defendants abandoned possession of the property being held under the said landlord-tenant relationship and made a new and independent adverse re-entry, there was no evidence that the defendants ever notified plaintiff or his predecessors in title of the abandonment of such landlord-tenant relationship or that they were making a new and independent adverse re-entry; that if plaintiff be mistaken that defendants were tenants of plaintiff and his predecessors in title, as a matter of law, the court erred in refusing to submit plaintiff's Requested Special Issue No. 1-A.

This issue is as follows:

"Do you find from a preponderance of the evidence that W. C. Blanks obtained possession of the Mary A. Green tract of land from William Green at the time he bought the William Green ranch in 1918? Answer yes or no.
"Answer: ————.'"

And that the court erred in refusing to submit plaintiff's Requested Special Issue No. 1-B, reading:

"Do you find from a preponderance of the evidence that in the year 1918 W. C. Blanks took possession of said Mary A. Green tract under an agreement or arrangement with William Green that W. C. Blanks would keep the taxes paid upon said Mary A. Green tract and for doing so W. C. Blanks would have the use of said Mary A. Green tract of land? Answer yes or no.
"Answer: ————."

In 1890 Mary A. Green filed on the 160 acre tract involved in this suit as a homestead and secured a patent. She lived on the land until her death in 1902. At the time of her death she left as her only heirs a son, William Green, three daughters, Laura Alice Newbrough, Mollie Strickland, Sara Jane Evans, and the heirs of Emma Lawson who had preceded Mrs. Green in death.

It appears that William Green continued to live in Coke County on his land and used the Mary A. Green land and paid taxes thereon until he leased his land and the Mary A. Green land in 1912 to Graham and Westbrook and moved to Brewster County, residing there until his death in 1948.

Mr. Green sold his Coke County land to W. C. Blanks in 1918, such conveyance did not include the Mary A. Green 160 acre tract.

In 1919 the 160 acre tract was assessed for taxes by Carruthers and Blanks through 1928 and was rendered by Mrs. E. B. Carruthers in 1929.

On December 16, 1929 Mrs. Carruthers conveyed to W. C. Blanks all of her land completely surrounding the Mary A. Green tract and including the Mary A. Green tract.

W. C. Blanks rendered the 160 acre Green tract for taxes from 1930 until his death in 1933 both years inclusive. The tract was included in the inventory and appraisement of the Estate of W. C. Blanks and taxes assessed and paid by the Estate.

The case was submitted to a jury on several Special Issues. Special Issues Nos. 1, 2, 3 and 4, preceded by appropriate instructions and definitions, are as follows:

1. "Do you find from a preponderance of the evidence that the defendants, and those under whom they claim, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, have held peaceable and adverse possession of the land in controversy, using, or enjoying the same, or any part thereof, and paying taxes thereon and claiming under deed or deeds duly filed for record in Coke County for

any period of five (5) consecutive years between December 16, 1929, and August 22, 1958?

"Answer 'Yes' or 'No'.

"Answer: Yes."

2. "Do you find from a preponderance of the evidence that the defendants and those under whom they claim, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, have held peaceable and adverse possession of the land in controversy, using or enjoying the same for any period of ten (10) consecutive years between December 16, 1929, and August 22, 1958?

"Answer 'Yes' or 'No'.

"Answer: Yes."

3. "Do you find from a preponderance of the evidence that the defendants, and those under whom they claim, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, have held peaceable and adverse possession of the land in controversy, or any part thereof, for any period of twenty-five (25) consecutive years between December 16, 1929, and August 22, 1958, under a claim of right, in good faith, and under a deed or other instrument duly recorded in Coke County, purporting to convey such lands?

"Answer 'Yes' or 'No'.

"Answer: No."

4. "Do you find from a preponderance of the evidence that there was a period of twenty-five (25) consecutive years immediately prior to August 22, 1958, during which the plaintiffs and those under whom he claims have not exercised dominion over the land here in controversy or have not paid taxes thereon for one or more years, and during which the defendants and those under whom they claim openly exer-

cised dominion over and asserted claim to said land, and paid taxes thereon?

"In considering the foregoing Special Issue No. 4, you are further instructed that:

"The 'Exercise of Dominion over Land' as used herein is such open acts and conduct relative to such land as would be done by an ordinarily prudent owner of land who might own this very land during the same time here involved.

"Answer 'Yes' or 'No'.

"Answer: Yes."

It is to be noted that the jury answered the first, second and fourth issues in the affirmative and the third in the negative, that is, that the plaintiff had not exercised dominion over the land, or paid taxes for a period of twenty-five years, and based on the verdict, the judgment was entered for the defendants.

As is to be seen, appellant's position is that the appellees and those through whom they claim are, as a matter of law, tenants by agreement or by consent, which was never repudiated either by giving actual or constructive notice, and are estopped to assert the statutes of limitation.

The appellees contend that the evidence is amply sufficient to support and sustain the jury's finding that the defendants and those under whom they claim held peaceable and adverse possession of the Mary A. Green 160 acre tract, using and enjoying the same and paying taxes thereon for a period of five consecutive years before the suit was filed and likewise were claiming under the ten and twenty-five year statutes of limitation, and that some of those represented by plaintiff had notice of the adverse claims.

■ We believe that the evidence is sufficient to sustain the jury's finding that the defendants and those under whom they claim had held peaceable and adverse pos-

session of the 160 acre tract involved herein and paid taxes thereon for the periods of five, ten and twenty-five years before this suit was filed.

The record is long, 1,116 pages of evidence, 73 exhibits on the part of plaintiff and 196 exhibits on the part of defendants, which we have carefully considered, but will only briefly refer to the evidence in this opinion.

There is no question but that the taxes were paid by W. C. Blanks and those claiming under him on the property since and including 1930, without delinquency, and also have been holding under the deed from Mrs. Ethel B. Carruthers, a widow, to W. C. Blanks dated December 16, 1929 and filed for record December 17, 1929, recorded the same day in Vol. 51, page 132, Deed Records of Coke County, Texas, which deed conveyed several tracts of land, among which was "Abstract 872, Mary A. Green Survey, 160 acres." The consideration was recited as $17,800 cash, cancellation of certain notes aggregating $34,000 held by W. C. Blanks and the agreement to pay one-fourth of a note for $8,000 due the Federal Land Bank and to pay the balance unpaid on a note for $10,000 on another note due the Federal Land Bank. As a part of the transaction Mrs. Carruthers agreed to pay the unpaid balance on a note given by W. C. Blanks et ux. to the Federal Land Bank in the amount of $10,000 and secured by a lien on other lands not here involved.

Mr. Blanks owned about 10,000 acres of land, divided into several pastures. One of the pastures contained about four sections of land enclosed by fences and included in this pasture is the 160 acre Mary A. Green Survey.

The entire ranch was leased by Mr. Blanks first to Mark E. Carruthers for a term of two years, and Carruthers was succeeded by Delbert P. Walling who remained in possession for twelve years, and according to his testimony the lands were enclosed with good fences and remained as originally erected and livestock were kept thereon and rentals paid to the Central National Bank and that during this period no one made any assertion to him of title adverse to the Blanks.

Riley J. King testified that he went into possession of the ranch as a tenant of the Blanks Estate in the Fall of 1944 and that he placed livestock on it and that no one ever asserted any claim to the lands; that two grandsons of William Green, namely J. D. and Bill Green, worked for him for a time and neither one said anything about they or any of their relatives claiming any of the land.

Tom Romine testified that he operated the Blanks' ranch from September, 1950 to August 1, 1954 with his son under a lease from Riley King and that he purchased some livestock from King and that he operated the ranch under an extension of the lease with the Bank as trustee for the Blanks Estate, to which he paid the rentals and that no one asserted any claims adverse to the Blanks.

Herschel Romine testified as to the use of the lands with his father, Tom Romine, and that fences were kept up and other improvements were kept in repair.

Leamon Walters was caretaker of the ranch from September 1954 through March 1957, being employed by the Blanks Estate, testified that he kept the fences and other improvements in repair and patrolled the ranch and that there were a large number of oil wells in the Green Pasture.

H. L. George, a surveyor living in San Angelo, did surveying for W. C. Blanks when Mr. Blanks first bought from Mrs. Carruthers, and in 1948 he located the corners and lines of property in the area including the Mary A. Green Survey and had recently prepared a map showing the fence lines. This map was identified as defendants' Exhibit 5. The surveyor made four well locations on the Mary A. Green Survey for F. Kirk Johnson.

Emette Westbrook, formerly employed by The Central National Bank in San An-

gelo from 1926 to 1958 as trust officer, handled the Blanks Estate lands, making an inventory, operating the ranch, collecting rentals, etc., testified that during the period of ownership by W. C. Blanks, his estate and those claiming under him, no one, neither William Green, any of his relatives, nor anyone else ever made any adverse claim against the lands until the suit was filed.

Olin Blanks, a lawyer and a son of W. C. Blanks, with offices in San Angelo, testified that he has one sister, Ruth D. Matlock, one brother, W. H. Blanks, and a sister, Mary Blanks Robbins now deceased; that he had known of his father's ownership of the ranch in Coke County since it was acquired from Mrs. Carruthers, a relative, in 1929; that he helped to prepare the inventory and took the descriptions from the deed; that he commenced to hear about the Mary A. Green Survey, distinct from the ranch as a whole, in 1948 in connection with a title requirement when an oil lease was made to Howard Green; that since his father's death he had claimed an undivided ¼th interest in the lands; that none of the several claimants as heirs of Mary A. Green, having heard their names read, ever came to him or wrote to him or indicated any claim at all to the Mary A. Green Survey, although he had received a letter of inquiry from H. O. Metcalfe, an attorney at Marfa, Texas.

According to the evidence of some of the claimants, few of them had seen the land prior to the time of the trial and there was no evidence of any payment or tender of payment of the taxes by any heir of Mary A. Green since 1918.

Oil explorations began on the Green Tract in 1953, the first well was commenced October 28, 1953 and completed on December 5, 1953, the second was commenced December 11, 1953 the third on January 23, 1954 and the fourth on February 26, 1954 and completed in March 1954.

David Kiester, superintendent for F. Kirk Johnson, testified as to the drilling of the oil wells, the improvements and equipment, building of roads and the daily presence of a pumper on the premises.

H. E. Cobb, Jr., general superintendent for the Crescent Oil & Gas Corporation, the purchaser of the leasehold from Johnson in July 1954, testified as to the oil operations on the lease from July 1954 to the date of trial and the daily presence of a pumper on the lease.

It is apparent to us that the evidence shows the actual possession and use of the land, the character of the claim of ownership being asserted by W. C. Blanks and his estate was on the records of Coke County.

A copy of the deed from Mrs. Carruthers to W. C. Blanks and the affidavit made by Emette Westbrook and Paul J. Brown were furnished Aaron Green and Wayne Green and their attorney, Mr. C. E. Patterson, in June 1950, but this suit was not filed until 1958. The affidavit reads as follows:

"Affidavit    Emette Westbrook & Paul
                      J. Brown to Public

The State of Texas    }
County of Tom Green   } Before me, the undersigned authority, on this day personally appeared Emette Westbrook and Paul J. Brown, each known to me to be a credible person and each having been by me first duly sworn, upon their oaths did depose and say:

"That for more than thirty (30) years next preceeding the date hereof affiants have been well acquainted with the location, use and possession of the Mary A. Green Survey of 160 acres in Coke County, Texas, designated as Abstract No. 872, and located within the boundaries of what is known as the W. C. Blanks Estate Ranch in Coke County, Texas; that in the year 1920 affiant Westbrook was connected with a bank in Sterling City, Texas, and affidant Brown was in the banking business in Robert Lee, Texas, and each of

the affiants has personal knowledge of the facts herein set forth; that in the year 1920 Ethel B. Carruthers had exclusive, peaceable and adverse possession of the above described survey, having the same enclosed in good and substantial fences in one of the pastures of her ranch in Sterling and Coke Counties, Texas, which pasture contained less than 5000 acres; that said tract of land was used for grazing purposes by the said Ethel B. Carruthers and her successors in title for the entire period from 1920 to the present date; that she and her successors in title made valuable improvements upon the ranch of which the above mentioned survey is a part consisting of the usual ranch improvements such as houses, fences, windmills, troughs and tanks and that at no time during such period was any adverse claim urged or asserted against said survey by any other person or persons and that the said Ethel B. Carruthers and her successors in title have had exclusive, peaceable and adverse possession of said survey during all such period of time claiming, using and occupying the same as their own.

"Affiant Emette Westbrook for himself further makes oath that to his own knowledge since the year 1930, W. C. Blanks and The Central National Bank of San Angelo as independent executor and trustee of his will and estate, have had exclusive, peaceable and adverse possession of said survey of land, have had the same enclosed in good substantial fences in a pasture containing less than 5000 acres of land and have paid all taxes assessed against said survey of land each year as they accrue prior to the time the same became delinquent and that no adverse claim of any kind or character has ever been asserted against said land or any part thereof.

"To all of which oath is made this 23rd day of March, A.D.1948.

"s/ Emette Westbrook
"s/ Paul J. Brown."

The affidavit was duly acknowledged and recorded.

Appellant's points Nos. 6, 7, 8, 11, 12, 13, 14, 15, 16 and 17 are to the effect that either there was no evidence to support the verdict of the jury or was insufficient to support the jury's answers to special issues Nos. 1, 2 and 4, or because the answers of the jury were so against the overwhelming weight of the credible testimony so as to be manifestly wrong and unjust. Points Nos. 9 and 10 are that the Court erred in rendering judgment based on the jury's answer to issue No. 1, because the jury did not fix the time when the five year period began and ended and because the Court did not condition the issues to an affirmative finding that the landlord-tenant relationship had been repudiated and that a new and independent adverse re-entry had taken place. These points are overruled.

■ Special Issue No. 1, hereinabove set out, required the existence of all the elements mentioned in Article 5509 as a requisite to an affirmative answer. This was a proper method of submitting the question of whether the defendants had obtained a five year limitation title.

Davis v. Dowlen, Tex.Civ.App., 136 S.W.2d 900, er. dism. cor. judgm.; Parr v. Ratisseau, Tex.Civ.App., 236 S.W.2d 503, er. ref., N.R.E.

Assuming, but not granting that the issues of repudiation and notice were raised, it was proper to submit one issue on Article 5509, embodying all its elements, with appropriate instructions concerning the effect of tenancy, repudiation and notice on the question of adverse possession as was done in this case in the Court's definition. Moore v. Knight, Tex.Com.App., 127 Tex. 610, 94 S.W.2d 1137.

There was evidence given by Mark E. Carruthers, a son of Mrs. Ethel B. Carruthers, as to his mother's ranch in 1918 or 1919, and that of W. C. Blanks and that they switched land between them; that

Blanks did not have any livestock on the ranch but leased it to others.

Willie I. Tubb testified that he knew of the sale by William Green of his lands to Blanks; that the witness worked on the ranch between 1925 and 1928 from time to time.

Appellant contended that W. C. Blanks was in possession of the Mary A. Green Survey in August 1923 at the time a letter was written to William Green.

The evidence as to possession from the time William Green left Coke County in 1918 until Blanks took possession through his first grazing lessee, Mark Carruthers, in June 1930, may be briefly stated as follows from the evidence of witnesses:

Earl Green testified that when his father returned from Coke County in 1918, he heard his father tell the mother of the witness: "Mollie, I don't know what to do with that place, but I let Mr. Blanks have the use of it for him to pay the taxes." This testimony was admitted over the objection of defendants as hearsay and self serving.

Wayne Green testified, over defendants' objection, that he heard his father say that when he left Coke County, he sold his ranch to Mr. Blanks and that he made a lease agreement on the 160 acres to pay the taxes for the use of it.

■ William Green did not testify and the statements attributed to him were hearsay, and the fact that Mr. Green is dead does not alter the rule and does not constitute evidence. Tex.Jur., Vol. 17, pages 519–520. Winn v. Federal Land Bank of Houston, Tex.Civ.App., 164 S.W.2d 864, er. ref.; Read v. Carver, Tex.Civ.App., 283 S.W.2d 284, er. ref., N.R.E.; Keystone-Fleming Transport Co. v. Tahoka, Tex. Civ.App., 277 S.W.2d 202, er. dism., W.O.J.

The evidence at its best does not show that W. C. Blanks himself had possession of the land and that W. C. Blanks and Mrs.

Carruthers were owners as tenants in common.

■ The essence of the tenancy and recognition of superior title cases involving the necessity of repudiation is that the limitation claimant must have been in possession when he accepted the tenancy relationship or must have gone into possession pursuant thereto.

American National Bank of Beaumont v. Wingate, Tex.Civ.App., 266 S.W.2d 934, er. ref., N.R.E.

In this case Blanks is never shown to be in possession or putting anyone in possession until June 1, 1930, a few months after recording the deed from Mrs. Carruthers, and more than seven years after he had written to William Green in August, 1923.

We believe that plaintiff, appellant herein, and those under whom he holds, were advised and had notice of the fact that the defendants, appellees herein, were claiming title by limitation in time for defendants to have thereafter acquired title under the five year statute of limitation.

W. C. Blanks died on May 1, 1933. One of the plaintiffs, Mrs. Lily Shoemake, testified that she knew about Mr. Blanks' death and she was living with her parents Mr. and Mrs. William Green and that she and her sister Mrs. Manse Bomar went to see Mr. Metcalfe, an attorney, at Marfa, Texas.

Mr. Metcalfe wrote to Olin Blanks on January 4, 1950 that William Green was dead and that he represented Mrs. Green and one of her daughters and that they had told him that the Mary A. Green Survey was being rendered for taxes in the name of W. C. Blanks Estate and that they had no record of a conveyance and he requested information about the title.

Olin Blanks replied to Mr. Metcalfe's letter and advised him that any defects in the title had been cured by limitation. Mr. Metcalfe communicated the contents of Olin

Blanks' letter to Mrs. Manse Bomar. This letter is as follows:

"January 12, 1950
"Honorable H. O. Metcalfe
"Attorney at Law
"Marfa, Texas

"Dear Judge Metcalfe:

"I acknowledge receipt of your letter of January 4th regarding Survey 6, Abstract 872, patented to Mary A. Green and situated in Coke County, Texas.

"This survey was conveyed by Mrs. Ethel B. Carruthers to my father, W. C. Blanks, by warranty deed dated December 16, 1929, recorded in Volume 51 at page 132 of the Deed records of Coke County, Texas. I have never examined the title to this survey and have always assumed that Mrs. Carruthers had good title thereto. Upon receipt of your letter I talked with Mrs. Carruthers about this survey and she assured me that she and my father bought all lands owned, claimed or held by William Green in what is known as the W. C. Blanks ranch in Coke County, Texas, in 1918 and I personally know that she and my father have had possession of all of said lands, including the above survey, since that time. She assured me that she is personally familiar with the transactions leading up to the purchase of the Green lands and that if this survey is omitted from the deed from Green to my father, it was a mutual mistake or error because it was the understanding of all parties that all lands owned by William Green and his wife were being purchased.

"Under these circumstances I believe you will agree with me that if there is any defect in the record title it has been cured by our Statutes of Limitation."

J. S. Farrell, an abstractor at Robert Lee, Texas, testified that at the request of C. E. Patterson, an attorney at Alpine, he furnished a chain of title to the Mary A. Green Survey and sent the original to Mr. Patterson who paid for it.

As a part of the chain of title there was the deed from Mrs. Carruthers to W. C. Blanks dated December 16, 1929 and recorded; a copy of the Inventory of the Blanks Estate; and the affidavit of Emette Westbrook and Paul Brown dated March 23, 1948. The chain of title also set out various instruments, oil leases, mortgages, ratification and royalty deeds.

The acts and conduct on the part of W. C. Blanks and of the trustees and beneficiaries of his estate, as well as the long silence of the plaintiffs after having knowledge of the title claims by W. C. Blanks and his heirs, is not compatible with the idea that a landlord and tenant relationship was ever established, or if commenced, was allowed to continue. Vasquez v. Meaders, 156 Tex. 28, 291 S.W.2d 926.

We do not believe that it was error for the Court to not submit plaintiff's Requested Special Issues Nos. 1–A and 1–B, issue 1–A inquiring if W. C. Blanks obtained possession of the Mary A. Green tract from William Green at the time he bought the William Green ranch in 1918 and issue 1–B inquiring if Blanks took possession of the Mary A. Green tract under an agreement with William Green that Blanks would keep the taxes paid for the use of the land.

The ultimate issue was sufficiently embodied in Special Issues submitted by the Court.

There was no evidence that Blanks went into possession of the Mary A. Green Survey in 1918 or any other time until 1930. Testimony of Earl and Wayne Green as to Blanks having the use of the land in return for paying the taxes was hearsay declarations which they claimed they heard their father make.

On August 7, 1923, W. C. Blanks wrote William Green a letter asking if a price could be made for the Mary A. Green Survey, and if not how they stood on a lease,—

that someone had said that he had a lease on it. The letter is as follows:

> "Blanks, Collins & Jackson
> "Attorneys at Law
> "San Angelo, Texas
> "Lock Box 48
>
> "August 7th, 1923

"Mr. William Green,
"Marathon, Texas

"Dear Mr. Green:

"Are you in a position to make a price on the 160 acres of land in my ranch belonging, I believe, to your Mother or her estate, and known as the M. A. Green 160 acre survey?

"If you do not care to sell the land, please write me your understanding of how we stand on the question of lease on it.

"I was informed a few days ago that somebody over in that neighborhood claimed to have leased this 160 acres from you, but this I could hardly believe to be true and am writing to make some inquiry about it.

"Yours truly,
"/s/ W. C. Blanks."

Mrs. Shoemake testified that Mr. Green replied to the Blanks' letter that he was in no position to sell the land; that he had not leased it to anyone else, and that he expected to keep his agreement which was that Blanks was to pay the taxes for the use of the land.

The time inquired about in the requested issues was 12 years before Blanks claimed to have gone into adverse possession.

■ The ultimate issues under the five year statute include possession and use for five years adversely and payment of taxes, and it was not necessary to break the ultimate issues into evidentiary components. Brown v. Bickford, Tex.Civ. App., 237 S.W.2d 763, er. ref., N.R.E.; Pickens v. Harrison, 151 Tex. 562, 252 S.

W.2d 575; McDonald Texas Civil Practice, Vol. 3, p. 1060.

■ It is not essential for the jury to fix the time when the five year period began and ended in connection with the submission of Special Issue No. 1; there was sufficient evidence to sustain the jury's answer to such issue for any period from December 16, 1929 and August 28, 1958.

No objection was made to Special Issue No. 1, or Issue No. 2 with respect to the period of time allowed the jury within which to find a limitation title, and no request was made that the Court give the jury any instruction which would fix the period of adverse possession as authorized by Rule 273, Texas Rules of Civil Procedure. Dyer v. Hardin, Tex.Civ.App., 323 S.W.2d 119, er ref., N.R.E.

■ We believe that the instructions and definitions of "peaceable possession" and adverse possession and instructions with respect to new and independent entry and repudiation, and the definition of "notice" are substantially correct, particularly so when no proper definitions, instructions and objections are submitted or made pointing out distinctly the matter objected to and the grounds of such objections.

We believe that the jury findings against tenancy is supported by the evidence as has been hereinabove set out and referred to. The jury saw and heard all of the witnesses for the plaintiff and for the defendants and was not bound to accept the testimony of those testifying for plaintiff. Angelina County Lbr. Co. v. Reinhardt, Tex.Civ.App., 285 S.W.2d 446, er. ref., N.R.E.; Jones v. Siler, Tex.Com.App., 129 Tex. 18, 100 S.W.2d 352.

This case was fully developed in trial in the district court and the plaintiff was allowed to make out his case, but the jury resolved the fact issue against him and in favor of the defendants and the judgment should be affirmed.

The judgment of the Trial Court is affirmed.