### SEVERO VASQUEZ V. PAUL L. MEADERS

No. A-5356. Decided May 23, 1956.
Rehearing overruled July 11, 1956.
(291 S.W. 2d Series 926)

*Luther Hughes, Henrichson, Bates & Hall,* all of Edinburg, for petitioner.

The Court of Civil Appeals erred in holding that there was no evidence to support an implied finding that petitioner's possession was of such unequivocal notoriety as to create the presumption that respondent and other record owners of the land had knowledge of the adverse claim of petitioner. Mauritz v. Thatcher, 140 S.W. 2d 303, Sweeten v. Park, 154 Texas 266, 276 S.W. 2d 794; Brown v. Binford, 237 S.W. 2d 763.

*Kelley, Looney, McLean & Littleton* and *Jackson Littleton,* all of Edinburg, for respondent.

Cited Federal Land Bank of Houston v. King, 132 Texas 481, 122 S.W. 2d 1061; Pearson v. Doherty, 143 Texas 64, 183 S.W. 2d 453; Mhoon v. Cain, 77 Texas 316, 14 S.W. 24.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit in trespass to try title was brought by the respondent, Paul L. Meaders, against petitioner, Severo Vasquez, to recover the title to and possession of a tract of 100 acres in Hidalgo County, a part of the Llano Grande Grant, and more specifically a part of what is referred to in the record as the San Pedro Ranch. In a trial to the court without the intervention of a jury, the court rendered its judgment that respondent take nothing by his suit and that petitioner go hence without day and recover his costs. The judgment has been reversed and rendered in favor of respondent by the Court of Civil Appeals, 278 S.W. 2d 956.

The trial court filed its findings of fact and conclusions of law. These findings are fully set out in the opinion of the Court of Civil Appeals and will not be repeated here. The principal question for our determination is: Do the facts showing long-continued, open, notorious, exclusive and inconsistent use and adverse occupancy and claim of title by a tenant constitute constructive notice to the landlord out of possession of the termination of such tenancy? We answer this question in the affirmative. Respondent contends and the Court of Civil Appeals has held that the character of possession, use and occupancy was no different after the time petitioner claims to have bought the land than before, and therefore, all the acts of petitioner were consistent with the acts of a permissive tenant. With this we cannot agree. The character of possession, use and occupancy by petitioner after 1922, as shown by the facts, was distinctly different than before. In 1917 one Pete Perkins leased the San Pedro Ranch from the owner and placed the petitioner, Vasquez, on the tract as a caretaker. Perkins leased the land for one year and Vasquez looked after the cattle for Perkins. After the expiration of the one year lease, according to the testimony of Pete Perkins, the petitioner and others, the petitioner continued to live on the land; in 1922 petitioner orally purchased the land from one Dolese, who had been left in charge of the land by the then record owner. Vasquez claimed the land as his own from 1922 until now, and told Pete Perkins that he had bought the land and that it was his. In 1922, petitioner with the help of a Mr. Callis separated the tract of 100 acres from the rest of the larger tract known as the San Pedro Ranch by the erection of a partition fence, thereby completely inclosing the 100 acres involved in this suit. Vasquez testified that he turned back the part of the San Pedro Ranch towards the east side, but that he kept back 100 acres. Mr. Perkins testified that when he leased the land it was grown up in brush, but that after Vasquez started claiming the land it was cleared up, stating, "Well, it is different now to what it was then (1917); at that time it was all brush, and now it is all cleaned up around there." Mr. Perkins testified that there was an acre graveyard on the 100 acres, and the evidence shows that permission was always obtained from Vasquez before anyone was buried there. One witness testified that at least three funerals a year were held there. Six houses are situated on the 100 acre tract; Vasquez lives in one and his children, with the permission of petitioner live in three of the houses, and two houses were vacant at the time of the trial. In regard to the houses, Mr. Vasquez, the petitioner, testified as follows:

"Q. Well, on this tract you say is your property, there are six houses located there now, is that right?

"A. Six houses.

"Q. These then, are the same six houses that were on the place when you moved on there to look after Mr. Perkins cattle?

"A. Yes sir. *But I have built some on there.*

"Q. *How many house would you say that you have built?*

"A. I have built or partially built four houses.

"Q. *You have built four houses?*

"A. *Yes, sir."* (Emphasis added.)

The record shows that these houses were built by the petitioner prior to 1939, and not later than 1932 or 1933. The record further shows that petitioner cleared land, cultivated fields and occupied the premises each and every year from 1922 until 1949, the date suit was filed.

The testimony shows that at one time a levee was built on the land, and permission was obtained from Mr. Vasquez to build it. One of the owners, Mr. I. N. Rounseville, held an unrecorded deed to the 100 acre tract from 1921 to 1943, and the trial court found as a fact that if he, Rounseville, "had come upon said land at any time during the period from 1922 to 1943, he would have found that Vasquez was in possession of same, claiming to have purchased it from Dolese, and claiming it as his own, and would have found Vasquez farming the land, running livestock thereon, and making his home thereon; that during such period from 1922 to 1943, I find no one claiming any rent from Vasquez, nor do I find that anyone challenged his possession or claim of ownership."

The record shows that respondent purchased the 100 acres involved in this suit in 1943 from the same I. N. Rounseville who held his deed off the record from 1922 until 1943, and that respondent knew that petitioner was on the land, but did not file this suit until 1949; that he went on the land about the time of purchase and later saw people there but did not inquire of Vasquez why he was there; that he attempted to cut brush in 1948 and was stopped and ordered off the premises by Vasquez.

The evidence set out above, in our opinion, shows that the petitioner repudiated his tenancy and is sufficient to charge the respondent with constructive notice of the hostile character of his claim. It is not necessary that actual notice of adverse claim and disseisin be given to the landlord. It is sufficient if constructive notice is given, and constructive notice will be presumed where the facts show, as they do in this case, that the adverse occupancy and claim of title to the land involved in this suit has been long continued, open, notorious, exclusive and inconsistent with the existence of title in the respondent. Such constructive notice was first given in 1922 and all the acts showing adverse claim occurred between the year 1922 and the year 1939, the latter date being ten years prior to the filing of this suit in 1949 by the respondent. The Court of Civil Appeals apparently recognizes this rule but holds that there is no evidence that petitioner gave constructive notice of his repudiation of tenancy and of his hostile claim. The Court cites the recent case of Park v. Sweeten, Tex. Civ. App., 270 S.W. 2d 687, affirmed by this Court, 154 Texas 266, 276 S.W. 2d 794, in support of this conclusion. We are of the opinion that the Park case has no application here, but we do find language in the opinion of the Court of Civil Appeals in the Park case which indicates that the court would have reached a different conclusion in the present case had it been of the opinion that the evidence fulfilled the requirements announced by the courts to be necessary to sustain a repudiation of tenancy of acts of unequivocal notoriety as distinguished from actual notice of repudiation. The court said, in part: "* * * The cases sustaining repudiation of tenancy by acts of unequivocal notoriety as distinguished from actual notice of repudiation, generally rely upon long continued possession and user coupled with nonclaimer on the part of the true owner. For instance, it may be that the evidence in this case would fulfill those requirements if the date of December 23 of the year 1945 were taken, but it is not sufficient to show the requisite quality of possession at the time of the crucial date of this lawsuit, that is, December 23, 1937, ten years prior to the filing of appellant's petition. * * *" We simply hold that the crucial time of the present lawsuit is the year 1939, the lawsuit having been filed in 1949, and that the evidence meets the test as laid down by previously decided cases. As was said in the case of Moore v. Knight, 127 Texas 610, 94 S.W. 2d 1137:

"We think the finding of the jury was fully justified by the proof. It is hardly necessary to reiterate what has often been stated by the courts. It is not necessary that actual notice of an adverse holding and disseizin be brought home to a coten-

ant. Such notice may be constructive, and will be presumed to have been brought home to the cotenant when the adverse occupancy and claim of title is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession; * * *"

For other cases announcing the same rule see Mauritz v. Thatcher, Tex. Civ. App., 140 S.W. 2d 303, wr. ref.; Rae v. Baker, Tex. Civ. App., 38 S.W. 2d 366, wr. ref. We think the following rule announced in the case of Mauritz v. Thatcher, supra, is particularly applicable to the facts in the present case:

"It is the settled law in this state that a tenant cannot dispute the title of his landlord by setting up a title either in himself or in a third person during the existence of his tenancy until such notice of a termination thereof is given to the landlord as amounts to an actual disseizin. Limitation upon an adverse possession in a case of this kind begins to run from the time of such notice of a termination of tenancy. It is not necessary, however, that actual notice of an adverse holding and disseizin be given to a cotenant or owner. Such notice may be constructive and will be presumed to have been brought home to the co-tenant or owner when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice. * * *"

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

JUSTICE WILSON not participating.

Opinion delivered May 23, 1956.

MR. JUSTICE GARWOOD, joined by JUSTICE CULVER, dissenting.

One might go along with the result in this case if the opinion should hold, as Mauritz v. Thatcher possibly meant to do, that after a certain extended period of ordinary adverse possession by a tenant has transpired without assertion of title meanwhile by the landlord-owner, subsequent ordinary adverse possession of the tenant shall be deemed to be with notice to the landlord of repudiation of the tenancy, so that such subse-

quent adverse possession, if continued for ten or more years, will perfect limitation title in the tenant, notwithstanding absence of other evidence of repudiation and notice thereof.

Such a rule would entail some apparent conflict with the rule as stated in many of our decisions, and indeed in Mauritz v. Thatcher itself, since the rather vague language in which the rule is generally couched indicates that there must be not only the element of unusually long time, but also the element of unusual obviousness or "notoriety" of acts or circumstances other than the mere extended lapse of time. However, the suggested rule would have the virtue of clarity and simplicity and would, I think, have a substantial basis in practical justice. In the present and no doubt some other cases, I think we actually apply the suggested rule but leave the law somewhat confused by adhering to the old language and by pointing out this and that ordinary act of adverse possession as if it had important bearing.

One trouble about this latter method of approach is that we are likely to lump everything together—long continuance of adverse possession and particular acts or circumstances—without reference to when these latter occurred. We thus have no clear basis upon which to say that, although a tenant or cotenant began his adverse possession without repudiation of his special status, and was therefore ineffectively claiming the land as against his landlord or cotenant, nevertheless at some particular date thereafter his special status was repudiated and his subsequent adverse possession was accordingly effective for this or that particular limitation period. For example, where a tenant or cotenant has merely ordinary adverse possession for fourteen years, without assertion of title by his landlord or cotenant, I think it quite incorrect to reason that the former hereby acquires title against the latter. In such a case it conceivably might be reasonable to say that at the end of the tenth year the landlord or cotenant out of possession is deemed to be on notice of the claim, so that the remaining four years would be years of effective adverse possession. But it seems incorrect to reason that, there being ordinary adverse possession for fourteen years, the landlord or cotenant out of possession has been on notice of the adverse claim from the very beginning.

In the instant case I find no reasonably clear evidence of repudiation of the tenancy unless it be mere extended lapse of time, to wit, twenty-seven years. We doubtless could say with much reason that at least by the end of the seventeenth year

the landlord was on notice of a hostile claim of the tenant, so that in the remaining ten or more years the latter acquired a limitation title. But none of the particular acts or circumstances apart from mere lapse of time appear to me to be acts of unusual obviousness or notoriety so as of themselves to evidence repudiation of the tenancy. Certainly the language of the rule for circumstantial evidence of repudiation, as we state it, implies that the circumstances, apart from the matter of length of time, must be more conspicuous than the ordinary acts of adverse possession. Nothing in Mauritz v. Thatcher appears to me to be contrary to this latter view. Indeed, the facts as stated in the opinion in that case as to the nature of the adverse possession are so brief and negligible that I think the result of the case cannot be justified unless on the ground of mere lapse of time. Except on this latter ground, Mauritz v. Thatcher seems to have little relevance to the instant case.

In Moore v. Knight, the result evidently rested on the nature of the acts of adverse possession and the absence of assertion of title by the cotenants out of possession, as distinguished from the matter of mere lapse of time. The facts in that case are so different from those of the instant case that comparison is quite difficult, and I think the decision does not particularly support the instant decision as we have written it.

Since the law as we write it evidently rejects mere length of ordinary adverse possession plus nonassertion of title by the owner as a ground for acquiring limitation title against a landlord or cotenant out of possession and purports to rely on inadequate acts and circumstances as constituting notoriety, I cannot agree with the decision, and accordingly enter this reluctant dissent.

Opinion delivered May 23, 1956.

MR. JUSTICE SMITH ON REHEARING delivered the opinion of the Court.

The respondent has filed his motion for rehearing calling our attention to the fact that the Court of Civil Appeals did not pass upon his Point Three which was an assignment in that court involving the sufficiency of the evidence, and he urges that if the case is to be reversed by this court it must be remanded to the Court of Civil Appeals for consideration of the point over which it has final jurisdiction.

■ The Court of Civil Appeals held there was no evidence to support an implied finding that petitioner's possession was of such unequivocal notoriety as to create the presumption that respondent and other record owners of the land had knowledge of the adverse claim of petitioner. That holding includes the lesser holding that the evidence is insufficient to show unequivocal notoriety. Generally, such included holdings require a remand to the trial court. Barker v. Coastal Builders, 153 Texas 540, 271 S.W. 2d 798. However, where the holding of "no evidence" results from an erroneous concept of the law, our policy is to remand to the Court of Civil Appeals for further consideration by that court. Hale v. Texas Employers' Ins. Ass'n., 150 Texas 215, 239 S.W. 2d 608.

The Court of Civil Appeals' holding of no evidence in this case resulted from an erroneous concept of the quantum of evidence necessary to prove unequivocal notoriety. Accordingly, the case is remanded to the Court of Civil Appeals for consideration of respondent's Point Three.

In all other particulars, the respondent's motion for rehearing is overruled. Respondent's motion for rehearing is granted in part and overruled in part.

Opinion delivered July 11, 1956.