**Nick ACHILLE et ux., Appellants,**

v.

**Lida BAIRD, a Widow et al., Appellees.**

No. 13987.

Court of Civil Appeals of Texas.

Houston.

Oct. 11, 1962.

Rehearing Denied Nov. 1, 1962.

Markwell, Stubbs, Decker & Dalehite, Henry G. Dalehite, Jr., Galveston, for appellants.

Armstrong, Bedford & Lambdin, Bart Hopkins, Galveston, for appellees.

WERLEIN, Justice.

This is an appeal from a summary judgment in a trespass to try title suit in favor of appellees, the record owners, who brought the suit against appellants, Nick Achille and wife, to recover an undivided one-half interest in Lot 324, Section 1 of the Trimble & Lindsey Survey of Galveston Island, Galveston County, Texas. Appellants pleaded not guilty, a general denial and the five and ten year Statutes of Limitation. To appellants' affirmative defense of limitations, appellees filed their first supplemental petition alleging that appellants were estopped to dispute appellees' title because the relationship of landlord and tenant existed between them.

Appellants assert in their one point that the court erred in granting appellees' motion for summary judgment since there are material disputed fact issues in the case.

The undisputed evidence shows that on December 13, 1934 one W. Wern, who had previously enclosed Lot 324 and six other lots within his fences, and who was in possession of all of such lots, executed and delivered to J. T. Allison, under whose will appellees claim title as sole beneficiaries of an undivided ½ interest in Lot 324, an acknowledgment of tenancy covering said lot, which acknowledgment was filed for record on December 13, 1934 and duly recorded on December 31, 1934 in Vol. 510, pp. 284, 285, of the Deed of Trust Records of Galveston County.

On December 15, 1937 appellants purchased from said Wern Lots 276 and 292 in Section 1 of said Survey. These two lots, each containing ten acres, which Wern owned, had been enclosed by him with ten-acre Lots 324, 313, 308, 297 and 281, forming a pasture of some 70 acres. Lot 281, which was quitclaimed to appellants by Wern on December 15, 1937, lies between Lots 276 and 292 in the east portion of the 70 acre pasture, and Lot 324 is the extreme westerly lot in the tier of parallel lots, each fronting approximately 330 feet or more on "S" Road and running back in a northerly direction approximately 1250 feet or more for depth.

Appellant, Nick Achille, testified by deposition with reference to the 70 acres, that Wern sold him everything that was under fence—fence and all; that he acquired whatever improvements there were on all the lots; that when Wern sold him Lots 276, 281 and 292, he, Wern, was living in the house located on Lot 276, and at such time Wern was in possession of Lot 324, and was using all seven lots for pasture and farming; that Wern turned over to him possession of all the lots, including Lot 324; and that he did not know J. T. Allison or any of the appellees and never gave actual notice to any of them that he was claiming Lot 324.

The affidavits of Wern show that he bought Lots 276 and 292 in August, 1929 and that when he bought such lots, he enclosed them and the other lots with a barbed wire fence and commenced and continued to use them for grazing of live stock until he sold to Nick Achille; that he was in possession of and used Lot 324 and signed the acknowledgment of tenancy to J. T. Allison about 1934; that he sold out and gave a deed to Nick Achille in Decem-

ber, 1937, to Lots 276 and 292, and a quit-claim deed to Lot 281, together with improvements and fences, and turned over possession to him of all seven Lots that he, Wern, had enclosed; and that he at no time repudiated or disaffirmed his tenancy under his acknowledgment of tenancy dated December 13, 1934, nor did he at any time thereafter give said J. T. Allison or any of appellees notice of any kind or character that he was holding or intended to hold possession of said Lot 324 under a claim of right inconsistent with and hostile to their title; and that while in actual possession of said lot he did not claim title to it adverse to the title of Allison or appellees.

There can be no question that appellants' possession was adverse to appellees and that they may claim the property in question under the 10 year Statute of Limitation unless estopped to do so because of the tenancy relationship relied upon by appellees. It is equally clear that at the time of the execution of the deeds hereinabove mentioned to three of said lots, Wern turned over to appellants possession of all the lots, including Lot 324, which were enclosed within a fence, and that appellants entered into possession under him and with his permission. After taking possession under Wern, appellants continued to graze live stock on the land just as had been done by Wern.

The law in this State with respect to the relationship of landlord and tenant is well expressed in the case of Houk v. Kirby Petroleum Co., Tex.Com.App. 1933, 65 S.W.2d 496, 499, as follows:

"The law of this state exacts from tenants the exercise of the utmost good faith in carrying out the tenancy relationship when once established. This rule also applies to persons acquiring title and possession whether by inheritance or by purchase from the tenant. Nothing short of an open, positive, and visible repudiation of that trust will suffice to start the running of the statute of limitation. Because Kirby Petroleum Company had no notice of the agreement between Houk and Collier under the facts here stated, will not be sufficient to take the case from under the well-established rule and set the statute in motion in its favor. The courts of this state, as well as the courts of other jurisdictions, have not drawn any fine distinctions upon this question. They rest their decisions upon the broad ground that where the relation of tenant and landlord is once established, it takes a plain, positive, and clear-cut repudiation to break that relationship, and until that is done, the tenant is estopped to deny the title of the owner. Benskin v. Barksdale [Tex.Com.App., 246 S.W. 360], supra; Buford v. Wasson, 49 Tex.Civ.App. 454, 109 S.W. 275, 278 (writ denied); Mattfeld v. Huntington, 17 Tex.Civ.App. 716, 43 S.W. 53 (writ denied); Udell v. Peak, 70 Tex. 551, 7 S.W. 786; 2 C. J. page 134."

It is appellants' contention that fact issues have been raised as to repudiation of the tenancy relationship and as to appellees having constructive notice thereof. The evidence shows that appellants, after they went into possession of Lot 324 and up to 1943, used the same for the grazing of live stock and that they made no use of the property different from that made thereof by Wern. In 1943 the United States Government took over much land that was located north and east of Lot 324 and close thereto for the purpose of making an army air field. The United States also took appellants' Lots No. 276, 281, and 292 which were included in the same pasture with Lot 324. At the same time an official of the government advised appellant Achille that the government would have to take and condemn all of the land that was included in the pasture and that he would have to get off the property. Appellants left and remained out of the pasture, including Lot 324, until May, 1944, at which time they were informed that the government would

not need any portion of the property except the three lots in the eastern portion of the 70 acre pasture for which appellants had been paid. Upon being so advised, appellants moved back into possession of the pasture, including Lot 324. They have remained in possession thereof ever since, using it for the grazing of cattle and keeping it enclosed with a fence.

■ The evidence shows that the north fence of the tier of lots in said pasture separated it from one Carl Duyf's pasture on the north, and that after the government had taken the Duyf property and Lots 276, 281 and 292, the Airport built a new fence about 40 or 50 feet farther north than the old north fence of the pasture. Nick Achille in his affidavit stated also that when he went back into possession of the property, he moved the south fence, which was along the old "S" Road, farther south, but there is nothing in the record to indicate how far. The relatively insignificant moving of the north and south fence lines of the lots remaining in the pasture, including Lot 324, was insufficient to constitute constructive notice of a repudiation of the tenancy relationship.

■ The evidence shows that in 1940 appellants rendered for taxation five acres, or an undivided one-half of Lot 324, and continued to render and pay taxes on such five acres out of Lot 324 until the year 1950, when for the first time appellant Achille rendered and paid taxes on the whole of Lot 324. From 1938 until 1950 the legal representatives of the Estate of J. T. Allison, Deceased, also rendered and paid taxes on an undivided one-half of Lot 324. The rendition and payment by appellants of taxes on an undivided one-half of Lot 324, or 5 acres, would not constitute assertion of a claim adverse to appellees. It is not necessary to decide whether the rendition and payment of taxes on the entire lot would constitute constructive notice because ten years did not elapse between 1950 and April 29, 1955, when this suit was filed.

■ The fact that appellants did not know of the tenancy relationship is immaterial. Overstreet v. Houston Oil Co., Tex.Civ.App., 64 S.W.2d 354, writ ref.; Houk v. Kirby Petroleum Co., supra.

■ We find no evidence in the record showing notice to appellees of any repudiation of the constructive tenancy which attached to appellants' possession. Nor do we find evidence of any facts from which appellees could have reasonably inferred there was any such repudiation. 2 Tex.Jur. 2d, p. 98, Adverse Possession, § 32; Overstreet v. Houston Oil Co., supra; Davis v. Lund, Tex.Com.App., 41 S.W.2d 57; Fowler v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 237 S.W.2d 373, writ ref.

■ The use appellants made of the property was insufficient as a matter of law to raise a fact issue as to constructive notice, especially since such use was identical with the use made of the property by Wern. Killough v. Hinds, 1960, 161 Tex. 178, 338 S.W.2d 707.

Appellants have cited a number of cases in support of their contention that notice of a repudiation of the landlord-tenant relationship need not be actual but also may be constructive. They particularly rely on Mauritz v. Thatcher, Tex.Civ.App., 140 S.W.2d 303, writ ref., in which the court stated:

"Such notice may be constructive and will be presumed to have been brought home to the co-tenant or owner when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice."

■ We do not construe the holding in Mauritz v. Thatcher to mean that constructive notice of a repudiation of tenancy

and adverse claim can be inferred from long-continued possession alone. As stated by the court, such possession must be inconsistent with the existence of title in others. In the instant case the possession by appellants was similar to the use made of the property by Wern and was not inconsistent with the landlord's title. Appellants entered into possession of the land as constructive tenants and their occupancy was and continued to be permissive from its inception as a matter of law. It was not inconsistent with the permissive use under which entry was made. Moreover, it cannot be said that there was a non-assertion of claim by appellees who were rendering the property for taxation and paying taxes thereon.

█ Appellants also contend that the death of J. T. Allison terminated the tenancy of Wern. We do not agree. In the acknowledgment of tenancy Wern promised to hold actual possession of Lot 324 as the tenant of Allison and the legal representatives of R. W. Wynn, Deceased, and their heirs or assigns, and to yield possession to them or to their agents, heirs, assigns or legal representatives on demand. The tenancy relationship was not severed by the death of J. T. Allison. 36 Tex.Jur. 2d, p. 120, Landlord and Tenant, § 265; Benskin v. Barksdale, Tex.Com.App. 1923, 246 S.W. 360; Meek v. Bower, Tex.Civ. App. 1960, 333 S.W.2d 175.

█ Appellants also contend that the requirement by the United States government that appellants leave the premises and remove their cattle, which requirement resulted in the temporary cessation of use of Lot 324 for a period of less than one year, amounted to a surrender or abandonment thereof, so that when they again went into possession, they went in claiming to be the owners and were freed from any constructive tenancy relationship that might have previously existed. It is our view that the fact that appellants turned over possession of the land to the United States government in 1943 did not terminate

the existing tenancy. In 51 C.J.S. Landlord and Tenant § 174, it is stated:

"A tenancy at will may be terminated by surrender and acceptance. A tenancy, however, is not terminated by the mere act of the tenant in vacating the premises, where the landlord does not accept the surrender, but there must also be a proper legal notice given by the tenant of his intention to terminate the tenancy."

In the instant case the United States government did not take Lot 324, although an official of the government did require appellants to vacate the same. There was no surrender or abandonment of the lot to appellees and no acceptance of any surrender by them, nor was there any notice of surrender or abandonment of possession given by appellants. West Lumber Co. v. Sanders, Tex.Civ.App., 225 S.W. 828, writ ref.; Juneman v. Franklin, 67 Tex. 411, 3 S.W. 562.

In his affidavit, appellant Achille stated:

"In December of 1937 I went into possession of the property involved in this suit and described as Lot 324, Section 1, of the Trimble & Lindsey Survey of Galveston Island, Galveston County, Texas. I went into possession as owner and have claimed ownership of this property ever since that time."

He also stated in his affidavit in describing his dealings with some purported official of the United States Government; "He told me that the government required me to get off my property and I did so at that time." He then concluded in his affidavit: "It is ours and we at all times claimed it as our own."

█ It is evident from the affidavit of appellant Achille that he at no time intended to absolutely abandon or surrender possession of Lot 324, or his claim or ownership thereto. In fact, his mere non-use of Lot 324 for a period of less than a year was not voluntary, but because, as he stated, the

government required him to get off. Even if he had intended to abandon or surrender possession of the premises in dispute, such intention would be ineffective to terminate the tenancy existing and make his possession after re-entry adverse to the title of appellees, without bringing notice of his intentions to them.

Accepting as true the evidence relied upon by appellants and giving them the benefit of every reasonable inference which can be drawn in their favor, we have concluded that there are no disputed fact issues in the case, and that appellees established their right to the summary judgment in question. Gulf, C. & S. F. Ry. Co. v. McBride, 1958, 159 Tex. 442, 322 S.W.2d 492; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93; Murchison v. Post Independent School Dist., Tex.Civ.App., 258 S.W.2d 229, ref. n. r. e.

Judgment affirmed.