**TEX–WIS COMPANY et al., Petitioners,**

v.

**Margaret JOHNSON et al., Respondents.***

**No. B–5503.**

Supreme Court of Texas.

March 24, 1976.

Rehearing Denied April 28, 1976.

---

* *Editor's Note:* The opinion of the Court of Criminal Appeals in *Smith v. State*, published in the advance sheets at this citation (534 S.W.2d 895), was withdrawn from the bound volume pending determination of a petition for rehearing.

Cox, Pakenham & Roady, Joe G. Roady, Houston, for petitioners.

Tillman, Pribilski & Hunt, James R. Hunt, Houston, Haley, Fulbright, Winniford, Bice & Davis, Sherwin A. Winniford, Waco, Mac Leon Bennett, Normangee, for respondents.

GREENHILL, Justice.

This is a suit in trespass to try title.

Plaintiffs Margaret Johnson and others brought suit against Tex-Wis Company and other persons claiming under Tex-Wis for title to, and possession of, a 53-acre tract of land and an adjoining 96-acre tract. In accordance with the jury's findings, the trial court rendered judgment in plaintiffs' favor with respect to both tracts. The Court of Civil Appeals affirmed. 525 S.W.2d 232. We affirm.

The plaintiffs are the heirs of King Alexander. Prior to 1892, King Alexander took possession of the 150 acres of land which constitute the two tracts in controversy.

As a result of litigation with the record titleholder of the 150 acres, Alexander obtained a judgment dated March 16, 1911, which awarded him 50 acres to be "carved out" from the 150 acres "in order to cover the house and other improvements thereon placed by King Alexander and the same is to be selected and run out by said King Alexander so as to include the aforesaid improvements, or as much of same as can conveniently in a square (sic)."

A set of field notes dated September 15, 1915, purported to locate "50 acres out of the K. Alexander 151½ acre survey."[1] In 1918, Alexander purchased the other 96 acres which make up the 150 acres. In consideration, he executed a note secured by a deed of trust. In 1921, as a result of Alexander's default on the note, the 96 acres were sold under the deed of trust to the predecessor in title of Tex-Wis. In spite of this foreclosure, Alexander continued to occupy the entire 150 acres until his death in 1934, at which time some other members of his family continued in possession.

In 1948, Tex-Wis obtained from the record owner a quitclaim deed to some 650 acres. This deed covered the 96-acre tract, but it expressly excepted "an undivided interest of 50 acres which was awarded to King Alexander by decree of court."

■ The jury found that the plaintiffs, or those under whom they claim, had held exclusive, peaceable and adverse possession of both the 96-acre tract and the 53-acre tract for a period in excess of ten years. Such possession was found to have begun on March 16, 1911, and to have ended in 1964, a period of some 53 years.[2] The jury also found that Tex-Wis did not hold exclusive, peaceable and adverse possession of either tract for a period equal to or exceeding ten years. The trial court accordingly awarded plaintiffs title and possession to both tracts; and as mentioned, that judgment was affirmed by the Court of Civil Appeals.

Tex-Wis first complains that there is no evidence to support the jury's finding of adverse possession of the 96-acre tract by plaintiffs. While there is ample evidence of actual possession, Tex-Wis strongly argues that possession of the land by King Alexan-

---

1. It appears that these field notes actually describe an area of approximately 53 acres. For this reason, the tract is referred to as the 53-acre tract.

2. These are not the appropriate dates for determining the period of adverse possession. Since Alexander held record title subject to a deed of trust to the 96 acres between 1918 and the 1921 foreclosure sale, his possession prior to 1921 does not bear upon the plaintiffs' claim of adverse possession as to that tract. The 1964 date is also inappropriate. The evidence establishes that an agent of Tex-Wis came into possession of the 150 acres no later than 1955. As discussed below, this entry destroyed the exclusivity of plaintiffs' possession. If they acquired title by limitation, they must have perfected their claim prior to this date.

der and his family could not be considered *adverse*, since such possession was based on a holding over after the 1921 foreclosure sale of the 96 acres.

■ It is clear that, as a general rule, a party holding over after the execution of a deed or the rendition of an adverse judgment is merely a permissive tenant; and his possession is subservient to the party holding title. *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794 (1955); *Kidd v. Young*, 144 Tex. 322, 190 S.W.2d 65 (1945). Consequently, such possession cannot be considered adverse until the tenancy has been repudiated, and notice of such repudiation has been brought home to the titleholder. *Sweeten v. Park, supra; Mauritz v. Thatcher*, 140 S.W.2d 303 (Tex.Civ.App. 1940, writ ref'd).

Actual notice of the repudiation, however, is not required. Under certain circumstances, notice may be inferred. *Killough v. Hinds*, 161 Tex. 178, 338 S.W.2d 707 (1960); *Vasquez v. Meaders*, 156 Tex. 28, 291 S.W.2d 926 (1956); *Moore v. Knight*, 127 Tex. 610, 94 S.W.2d 1137 (1936); *Illg v. Garcia*, 92 Tex. 251, 47 S.W. 717 (1898); *Mauritz v. Thatcher, supra*. This is the problem at hand.

While these rules are recognized, it is not clear what circumstances permit an inference of notice. Tex-Wis contends that there must be a change in the use, or the character of possession, of the land to give rise to such an inference. Since there is no evidence that Alexander or his family made any different use of the land, or in any way changed the character of their possession after the foreclosure in 1921, Tex-Wis argues that as a matter of law there could have been no notice of repudiation. There are cases which tend to support this position. See, e. g., *Killough v. Hinds, supra; Sweeten v. Park, supra; Kidd v. Young,*

*supra; Achille v. Baird*, 361 S.W.2d 439 (Tex.Civ.App.1962, writ ref'd n. r. e.); *Brown v. Bickford*, 237 S.W.2d 763 (Tex. Civ.App.1951, writ ref'd n. r. e.).

However, there are other cases, involving long-continued use, which permit the jury to infer notice of a repudiation without any change in the use of the land. For example, *Mauritz v. Thatcher*, 140 S.W.2d 303 (Tex.Civ.App.1940, writ ref'd), states that:

"Such notice may be constructive and will be presumed to have been brought home to the co-tenant or owner when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice. *It is held that repudiation of the claim of a co-tenant and notice thereof may be shown by circumstances and that a jury may infer such facts from long continued possession of the land under claim of ownership and non-assertion of claim by the owners.*" [3] 140 S.W.2d at 304.

See also *Moore v. Knight, supra;* and *Illg v. Garcia, supra.*

■ It is our opinion that this quotation remains an accurate statement of the law. This conclusion is supported by an analysis of the opinions of this Court in *Sweeten v. Park* and *Vasquez v. Meaders*, cited above. In *Sweeten*, this Court approved the holding of the Court of Civil Appeals that there was no evidence to support a finding of repudiation. In addition, however, we approved the following language of the Court of Civil Appeals:

"  .   .   . It was not contended that appellees gave actual notice of a repudia-

---

**3.** All emphasis in this opinion has been supplied by this Court unless otherwise indicated. The above quotation in *Mauritz* is taken in substance from *Moore v. Knight*, 127 Tex. 610, 94 S.W.2d 1137 at 1140.

tion of tenancy to Mrs. A. J. Hutcherson or to her children, who were the holders of the record title from the date of the judgment until the conveyance to Lon Felts in 1938. *As suit was filed on December 23, 1947, repudiation and notorious acts evidencing such repudiation must have taken place between May 30, 1934* [when the holdover tenancy began], *and December 23, 1937, a period of approximately three years and seven months after the date of the judgment.* When we limit our consideration to this period, it is found that the possession of appellees was of substantially the same nature and kind as that maintained by them prior to the rendition of the judgment. Under ordinary circumstances, it would be sufficient to support a finding of adverse possession under the statute, but it is insufficient to show a repudiation of tenancy by acts of unequivocal notoriety." 276 S.W.2d 794, at 798.

■ It is apparent from this quotation that the Court relied on the fact that the length of the adverse claimants' possession had been only thirteen years. Since notice of repudiation is required before the ten-year statutory period begins to run, such notice had to arise during the three-year-and-seven-month period between the beginning of the holdover tenancy and the date ten years prior to the filing of the suit. Three years and seven months was not considered to be "long-continued possession" under the *Mauritz* rule. Since there was no change in the use of the property during that relatively brief time period (3½ years), there was no evidence from which the jury could find or infer notice of repudiation.

The *Vasquez* case, on the other hand, involved twenty-seven years of hostile possession, or seventeen years in excess of the ten-year statutory period. While this Court sustained title in the adverse claimant by concluding that the character of his possession, use and occupancy was distinctly different after the holding over, this Court's

opinion also made reference to the rule of long-continued possession:

"We are of the opinion that the [Sweeten] case has no application here, but we do find language in the opinion of the Court of Civil Appeals in the [Sweeten] case which indicates that the court would have reached a different conclusion in the present case had it been of the opinion that the evidence fulfilled the requirements announced by the courts to be necessary to sustain a repudiation of tenancy of acts of unequivocal notoriety as distinguished from actual notice of repudiation. The court said, in part: ' . . . *The cases sustaining repudiation of tenancy by acts of unequivocal notoriety as distinguished from actual notice of repudiation, generally rely upon long continued possession and user coupled with nonclaimer on the part of the true owner. For instance, it may be that the evidence in this case would fulfill these requirements if the date of December 23 of the year 1945 were taken, but it is not sufficient to show the requisite quality of possession at the time of the crucial date of this lawsuit, that is, December 23, 1937, ten years prior to the filing of appellant's petition.* . . . ' We simply hold that *the crucial time* of the present lawsuit is the year 1939, the lawsuit having been filed in 1949, and that the evidence meets the test as laid down by previously decided cases." 291 S.W.2d 926, at 928.

The opinion concludes with quotations from *Moore v. Knight, supra,* and *Mauritz v. Thatcher, supra,* that constructive notice will be presumed to have been brought home to the owner where the adverse occupancy and claim of title to the property is *so long-continued,* open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise an inference of notice.

We recognize that the dissent in *Vasquez* took the position that the opinion of the majority of the Court evidently rejected

mere length of ordinary adverse possession plus non-assertion of title by the owner as a sufficient basis for constructive notice of adverse possession. We cannot agree with this interpretation. Had this been the majority's intent, it would not have quoted with approval the language of the Court of Civil Appeals in *Sweeten* that "the cases sustaining repudiation of tenancy by acts of unequivocal notoriety . . . generally rely upon long continued possession and user coupled with nonclaimer on the part of the true owner." Nor would it have relied on *Moore v. Knight, supra,* and *Mauritz v. Thatcher, supra,* which state that rule.

■ We see no inconsistency between the rule announced in the *Mauritz* case and the one applied in *Sweeten.* Each is nothing more than an application of the rule of circumstantial evidence that the existence of certain facts tends to support a reasonable inference that the record owner has been put on notice that the tenancy has been repudiated. To this extent, both satisfy the rationale for requiring such notice. Where a tenancy relationship has arisen, the landlord is normally justified in assuming that the tenant's use of the premises is permissive and in recognition of the landlord's title. However, under certain circumstances, this assumption ceases to be justifiable. Thus acts which are inconsistent with the original use of the property may be sufficient to put the owner on notice that the tenancy has been repudiated. The same has been held to be true in cases of long-continued possession by the tenant under claim of ownership where the landlord has failed to assert any claim. Under such circumstances, the jury may find that

continued reliance on the tenancy by the landlord was unreasonable and unwarranted.

■ Consequently, we hold that the jury may infer that notice of repudiation has been brought home to the titleholder where there has been (1) long-continued possession under claim of ownership and (2) nonassertion of claim by the titleholder. By "nonassertion of claim by the titleholder," we mean the absence of any overt act of ownership on the part of the record owner which is inconsistent with notice of a repudiation. For example, payment of taxes by the titleholder has been held to be a sufficient assertion of ownership. *Achille v. Baird,* 361 S.W.2d 439 (Tex.Civ.App.1962, writ ref'd n. r. e.).[4] Entry or a similar exercise of dominion over the premises is not required.

■ It should be emphasized that this holding in no way limits or restricts the rule that a change in the use or character of possession of the land is sufficient to support a finding of notice of repudiation. In cases of that kind, notice may be inferred regardless of the length of possession.

■ In the present case, there is no evidence of any change in use or character of possession after 1921. Consequently, plaintiffs must rely on the rule of long-continued possession and nonclaimer by the owner. The plaintiffs' period of adverse possession must have been completed by 1955.[5] In determining the period of possession, the "crucial time" referred to in *Vasquez* (before which notice of repudiation must have been given or inferred) is the year 1945,—this being ten years prior to the latest date at which plaintiffs' possession

---

4. While there is language in the Achille case which appears to conflict in some respects with the present holding, we think the result there was correct because of the fact that the record owners had paid taxes on the disputed property. As the opinion in that case recognized, this fact would preclude an inference of notice of repudiation based on the rule of long-continued possession.

5. Plaintiffs concede that an agent of Tex-Wis came into possession of the 96-acre tract in 1955. Therefore, the exclusivity of their possession was destroyed; and if they are to acquire title by limitation, their claim must have been perfected before this date.

could have satisfied the requirements of adverse possession. The circumstances giving rise to an inference of notice, therefore, must be found in the twenty-four year period between 1921 (when the holdover tenancy began) and 1945 (the "crucial time"). There is evidence in the record that Alexander, or persons claiming under him,[6] maintained open and continuous possession inconsistent with title in others during this twenty-four years. The record reflects that, during this time, the Alexander family resided on the 96 acres in five separate residences. They farmed the land, maintained fences and ran livestock on it. There is also evidence that no claim was asserted by the record owner during this time. From such circumstances the jury could reasonably infer that there had been brought home to the owner of, the property notice that Alexander and his family had repudiated the tenancy and were claiming title in themselves. Since there is evidence in support of the jury's findings, which the Court of Civil Appeals has held to be sufficient, the fact issue is established; and we cannot hold to the contrary. See *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 351, 363 (1960).

It may be noted that we make no attempt to set out any precise test for determining "long-continued" possession. The number of years required may vary according to the circumstances of the particular case. This is not to say that there is no minimum requirement. In the *Sweeten*

case, three years and seven months was held to be insufficient. On the other hand, we feel that 24 years in excess of the 10-year statutory period falls within the *Mauritz* rule, as constituting "long-continued" possession.

Tex-Wis also challenges the two jury findings of adverse possession by claiming that there is no evidence of possessory acts by plaintiffs or their predecessor as to either the 96-acre or the 53-acre tract. The evidence is to the contrary. It clearly appears from the record that Alexander, or those claiming under him, lived upon, farmed, and raised livestock on the 96-acre tract for a period well in excess of ten years. Likewise, there is evidence that similar possessory acts extended to the 53-acre tract. This point is overruled.[7]

Tex-Wis further maintains that, as a matter of law, it acquired limitation title to the 150 acres under the ten-year statute. This claim is based upon the use and possession by C. W. McKnight who entered the premises under a lease with Tex-Wis. While there is conflicting evidence as to the exact date of McKnight's entry in the 1950's, the evidence most favorable to the jury's finding indicates the entry was in 1955. However, there is evidence that Kitty Alexander, who is King Alexander's daughter and one of the plaintiffs, continued to reside on the land until 1964. This suit was filed in 1972, only eight years later. As a result, Tex-Wis failed to establish as a matter of law that it had exclusive possession for a period of ten consecutive years.

**6.** As an alternative argument on appeal, plaintiffs contend that their claim should not be tied to Alexander's possession, but that it should be viewed as an independent claim of right. By characterizing themselves as naked trespassers, as opposed to permissive tenants, they seek to avoid the requirement of repudiation. However, there is no basis in the record for this position. This suit was brought by the heirs of King Alexander and was tried accordingly. A tenancy relationship having been established as to Alexander, it attached to all his successors. *Cox v. Kirby Lumber Corp.*,

129 S.W.2d 376 (Tex.Civ.App.1939, writ ref'd). The fact that plaintiffs are Alexander's heirs permits the tacking of their possession after his death to his possession. *Hutto v. Cook*, 139 Tex. 571, 164 S.W.2d 513 (1942).

**7.** Since we have found that there is evidence to support the jury's finding and the trial court's judgment that plaintiffs have acquired title to the 53 acres by adverse possession, no useful purpose would be served by discussing the points of error involving plaintiffs' claim of record title to the tract.

Tex-Wis contends that the plaintiffs are precluded from relying on the evidence that Kitty Alexander remained in possession until 1964. It argues that the following portion of the deposition testimony of Kitty Alexander, then 90 years of age, operates as a judicial admission, and prevents any finding that her possession extended beyond the early 1950's.

> "Q: . . . How many years has it been since you moved from that place [the 150 acres]?
>
> "A: Oh, it has been a long time.
>
> "Q: Well, do you know about how many years?
>
> "A: Oh, about twenty or thirty years away from there."

As a general rule, the testimonial declarations of a party will not be given the force and effect of a judicial admission. See *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224 (Tex.Civ.App.1951, writ ref'd); and *Stafford v. Wilkinson*, 157 Tex. 483, 304 S.W.2d 364 (1957). In order to bind a party to his admission, a five-prong test has been prescribed. One of these requirements is that the statement be deliberate, clear, and unequivocal, and the hypothesis of mere mistake must be eliminated. *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415 (1960); *United States Fidelity & Guaranty Co. v. Carr, supra.* Kitty's advanced age at the time of the deposition is a relevant factor; and there was testimony by other witnesses, several of whom had no interest in the suit, which indicated that she had remained on the premises until 1964. In addition, Kitty's statement set out above is but a small part of her deposition testimony. Plaintiffs' attempt to introduce other parts in explanation was blocked by objection of Tex-Wis. Under these circumstances, Kitty's statement that she had moved away from the 150 acres "about twenty or thirty years ago," taken in context, will not be considered to be a judicial admission which is binding on the plaintiffs. It was and is relevant, and was evidence to be considered by the jury. *United States Fidelity & Guaranty Co. v. Carr, supra.* The point is overruled.

The judgment of the Court of Civil Appeals is affirmed.