In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00190-CV


______________________________




HONLEY WITCHER AND ROY WITCHER, Appellants



V.



R. DARYLL BENNETT, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2002-024




 




Before Morriss, C.J., Carter and Hadden,* JJ.


Opinion by Justice Carter




___________

*Roby Hadden, J., Sitting by Assignment


O P I N I O N



 Honley Witcher and Roy Witcher (herein collectively the Witchers) appeal from the trial
court's granting of R. Daryll Bennett's motion for summary judgment, which rejected the trespass
to try title claims of the Witchers, awarded a permanent injunction against the Witchers from
entering onto the lands in controversy, and awarded attorney's fees to Bennett.

 The Witchers raise four issues on appeal. They argue the trial court erred in 1) awarding
attorney's fees to Bennett due to lack of authorization under the law, 2) awarding summary judgment
on attorney's fees due to the existence of a fact issue concerning attorney's fees, 3) granting Bennett's
motion for summary judgment disposing of Honley Witcher's claim of adverse possession because
an issue of fact existed as to whether Honley Witcher had matured title under the ten-year statute of
limitations, (1) and 4) granting a permanent injunction to Bennett. On appeal, Bennett has waived any
and all claims for attorney's fees associated with the motion for summary judgment. Therefore, we
will only address the Witchers' third and fourth points of error.

 In 1985, Honley Witcher constructed a pond on the disputed tract of land in Rusk County,
Texas, comprising approximately sixty-four acres. The disputed tract is adjacent to the land on
which Honley Witcher's home is located. In 1987, a judgment in trespass to try title was taken
against Honely Witcher concerning the disputed tract. Despite the judgment, Honley Witcher
remained in possession of the land. In 1989, a default judgment was granted in another trespass to
try title suit brought by a new owner of the record title of the same land, which included a permanent
injunction prohibiting Honley Witcher from entering the property. Honley Witcher continued to
possess the disputed land. 

 In their answers to interrogatories, the Witchers claim that, during this time, Honley Witcher
and Roy Witcher, at Honley Witcher's direction, grazed livestock, built and maintained fences,
fertilized, harvested hay, constructed a pond, and paid taxes on the disputed property. Philip Hobbs,
a neighbor of Honley Witcher, testified that Honley Witcher has grazed his livestock and harvested
hay from the land for "a period of at least 15 years and, perhaps, 20 years." Both Roy Witcher and
Honley Witcher admit in their answers to the interrogatories they never told the record owners that
Honley Witcher claimed ownership of the land.

 Honley Witcher also claimed that it "is well known in the community that the land belongs
to me." Terry McAllister and Hobbs assert that Honley Witcher has been in continuous possession
of the land to the exclusion of all other persons since before 1989 and at all times has represented
he owned the said land. In his answers to the interrogatories, Roy Witcher asserts that, during early
January of 2001, he ordered Warren Mangnall, the record owner of the property at that time, off the
property. When Mangnall refused to leave, Roy Witcher called the sheriff, who escorted Mangnall
from the property. 

 On January 11, 2002, Bennett acquired title to the disputed tract. Bennett filed the current
suit on January 18, 2002, against Honley Witcher and his son, Roy Witcher, to permanently enjoin
them from entering on the land. The Witchers filed a counterclaim in trespass to try title, alleging
Honley Witcher had acquired record title by adverse possession. Bennett filed a motion for summary
judgment alleging he could disprove that the Witchers failed to provide any "actual notice or
unequivocal and notorious actions," which repudiated the tenancy at sufferance or in the alternative
provided any repudiation before January 18, 1992. On October 7, 2002, the trial court granted
Bennett's motion for summary judgment, which rejected the trespass to try title claim of the
Witchers, awarded a permanent injunction against the Witchers from entering onto the land in
controversy, and awarded attorney's fees in the amount of $6,500.00, plus interest, to Bennett.

 To prevail on a motion for summary judgment, a movant must establish that there is no
genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
Summary judgment for a defendant is proper when the defendant negates at least one element of each
of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an
affirmative defense. Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

 In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge
every reasonable inference in the nonmovant's favor. Martinez, 941 S.W.2d at 911. All doubts
about the existence of a genuine issue of a material fact must be resolved against the movant. 
Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996). A movant must
establish his or her entitlement to a summary judgment on the issues expressly presented to the trial
court. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671 (Tex. 1979); Christensen v.
Sherwood Ins. Servs., 758 S.W.2d 801, 803 (Tex. App.-Texarkana 1988, writ denied).

 The Witchers concede Bennett possesses record title to the tract in controversy. The
Witchers also concede Honley Witcher continued in possession after the 1987 judgment as a tenant
at sufferance. Rather, the Witchers argue that summary judgment was inappropriate because Bennett
had not conclusively established the lack of constructive notice of repudiation of the tenancy at
sufferance.

 A party that holds over after an adverse judgment has been rendered against it is merely a
permissive tenant, or a tenant at sufferance. Tex-Wis Co. v. Johnson, 534 S.W.2d 895, 899 (Tex.
1976); Williams v. Martin, 395 S.W.2d 714, 717 (Tex. Civ. App.-Texarkana 1965, writ ref'd n.r.e.). 
Consequently, before the tenant can begin to adversely possess the land, he or she must repudiate
the tenancy. Tex-Wis Co., 534 S.W.2d at 899; Williams, 395 S.W.2d at 717; Angelina County
Lumber Co. v. Reinhardt, 285 S.W.2d 446, 447 (Tex. Civ. App.-Beaumont 1955, writ ref'd n.r.e.). 
However, the Texas Supreme Court has held that actual notice is not required. Tex-Wis Co., 534
S.W.2d at 899. Adopting the reasoning of the Galveston Court of Civil Appeals, the Texas Supreme
Court held that:

 Such notice may be constructive and will be presumed to have been brought home
to the co-tenant or owner when the adverse occupancy and claim of title to the
property is so long-continued, open, notorious, exclusive and inconsistent with the
existence of title in others, except the occupant, that the law will raise the inference
of notice to the co-tenant or owner out of possession, or from which a jury might
rightfully presume such notice. It is held that repudiation of the claim of a co-tenant
and notice thereof may be shown by circumstances and that a jury may infer such
facts from long continued possession of the land under claim of ownership and
non-assertion of claim by the owners.


Id. (emphasis in original) (quoting Mauritz v. Thatcher, 140 S.W.2d 303, 304 (Tex. Civ.
App.-Galveston 1940, writ ref'd)); accord Natural Gas Pipeline Co. of Am. v. Pool, 40 Tex. Sup.
Ct. J. 1077, 2003 Tex. LEXIS 246 (Tex. Aug. 28, 2003). Constructive notice can be established by
(1) long-continued possession, or (2) change in the use or character of possession of the land. Tex-Wis Co., 534 S.W.2d at 901. 

 The Witchers argue that constructive notice was established through long-continued
possession, giving rise to a fact issue for the jury. The Texas Supreme Court has held that
constructive notice could be established by "(1) long-continued possession under claim of ownership
and (2) nonassertion of claim by the titleholder." Id. The Texas Supreme Court further noted that
"we make no attempt to set out any precise test for determining 'long-continued' possession. The
number of years required may vary according to the circumstances of the particular case." Id. at 902;
accord Woodrow v. Henderson, 783 S.W.2d 281, 285 (Tex. App.-Texarkana 1989, no writ). 

 The last judgment prohibiting the Witchers from entering the property was granted on
April 13, 1989. Bennett filed this suit on January 18, 2002. Therefore, in order to acquire title by
adverse possession under the ten-year statute, the Witchers must have given constructive notice after
April 13, 1989 and before January 18, 1992. Bennett argues that a period of two years and nine
months is insufficient as a matter of law to entitle the Witchers to establish constructive notice of
the permissive tenancy by "long-continued" possession. In Sweeten v. Park, 154 Tex. 266, 276
S.W.2d 794, 798 (1955), the Texas Supreme Court affirmed the Court of Appeals' decision that three
years and seven months was insufficient to establish long-continued possession as a matter of law. 
While in general whether constructive notice has been given is a fact issue, (2) Sweeten indicates that
a period of less than three years and seven months is insufficient as a matter of law. (3) Honley Witcher
only possessed the land two years and nine months after the second adverse judgment. Based on
Sweeten, we hold that the Witchers did not repudiate the tenancy at sufferance due to long-continued
possession as a matter of law.

 In their fourth point of error, the Witchers argue that, if we find that a fact issue existed
concerning whether Honley had acquired title by adverse possession, the trial court erred in granting
the permanent injunction. Because we have held that the Witchers did not repudiate the tenancy at
sufferance by Honley Witcher's "long-continued" possession as a matter of law, there is no need to
address their fourth point of error.

 Since Bennett has waived any and all claims to attorney's fees associated with the summary
judgment, we reverse the trial court's award of attorney's fees and render a take-nothing judgment
for attorney's fees. We affirm the remainder of the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: October 2, 2003

Date Decided: October 14, 2003

1. See Tex. Civ. Prac. & Rem. Code Ann. § 16.026 (Vernon 2002).
2. Tex-Wis Co. v. Johnson, 534 S.W.2d 895, 901 (Tex. 1976); see Woodrow v. Henderson, 783
S.W.2d 281, 285 (Tex. App.-Texarkana 1989, no writ); see also King Ranch, Inc. v. Chapman, 46
Tex. Sup. Ct. J. 1093, 2003 Tex. LEXIS 242 (Tex. Aug. 28, 2003). 
3. Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794, 798 (1955). We note that Sweeten was
limited to 1) when the grantor retained possession of land after executing a deed thereto, or 2) when
both parties consented to the judgment. Id. at 796. Sweeten specifically did not rule on when a party
held over after an adverse judgment. Id. The Houston Court of Civil Appeals has held that there
is no logical distinction between a consent judgment and an adverse judgment and applied the
reasoning of Sweeten to repudiation of a tenancy at sufferance after an adverse judgment. Green v.
Vance, 311 S.W.2d 738, 740 (Tex. Civ. App.-Houston 1958), writ ref'd n.r.e., 158 Tex. 550, 314
S.W.2d 794 (1959) (per curiam). In refusing writ, the Texas Supreme Court agreed with the Houston
court that no distinction exists between a party holding over after a judgment based on the consent
of the parties or a judgment based on adverse proceedings. Green, 314 S.W.2d 794. 


fact issue on either of these points.

 Feagins also sought injunctive relief under the DTPA. Feagins points out in his appellate
brief that Dealer's motion for summary judgment does not refer in any respect to his DTPA
allegations; thus, he argues, summary judgment against his claim on that issue was not properly
rendered. That is not precisely correct, as the motion does ask, in a single sentence, that the motion
for injunction be denied. The sole argument raised under that contention was that, if the fraud claims
failed as a matter of law, then no injunctive relief could properly be granted. Since we hold that the
summary judgment was proper as to the affirmative misrepresentation causes of action, it was also
proper in denying injunctive relief under the DTPA as it may apply to those alleged affirmative
misrepresentations.


(3) Dealer Had No Duty Regarding the Alleged Fraudulent Nondisclosure

 Feagins alleges that Dealer fraudulently concealed the fact that it made a profit of $556.20
on the resale of his contract to the third-party lender and that, had he known of the profit, he would
not have entered into the transaction. Part of the summary-judgment evidence is a "commission"
sheet attached to the approval documentation, indicating that a commission was paid to Dealer of
the $556.20--approximately half of the resale premium paid to Dealer resulting in a one percentage
point difference between the contract rate and the effective interest rate being earned by the third-party lender.

 Dealer's sales manager, Bragg, was deposed, and his fairly brief deposition is also part of the
summary judgment proof. He was questioned about the Feagins transaction and forms used in it and
explained that Dealer had an indirect lending agreement with Household Automotive Financial
Corporation. Bragg identified Dealer as the creditor that assisted in arranging the financing. Though
his explanation in his deposition was not carefully phrased, Bragg explained the difference between
the rates is essentially that the "buy rate" was 11.89 percent, which is the effective rate the third-party
lender receives after paying Dealer a premium for the retail installment sales contract, while the
actual rate to Feagins was 12.89 percent. A document, titled "Approved-Structure" and generated
by the third-party lender, stated that it had approved financing for Feagins at a "Buy Rate" of 11.89
percent. Bragg described the $556.20 as Dealer's commission on the interest rate differential.

 Dealer argues that there was no evidence that it had any duty to disclose any facts to Feagins,
no evidence that it was deliberately silent as to such facts, that Feagins relied on Dealer's
nondisclosure, or that Feagins was injured by any nondisclosures. The part of Dealer's argument that
is viable is the argument of no duty. As discussed above, there is summary judgment proof that
Feagins relied on the completeness and accuracy of the representations made to him and that he
signed the contract only because of them, language broad enough to include the concealment of a
"side" profit by Dealer on the resale of the contract. Thus, there is neither a lack of any evidence of
Feagins' reliance or injury, nor conclusive proof that Feagins did not rely or was not injured. A
summary judgment is improper here on the basis of lack of reliance or injury.

 This theory of tort liability is based on the concept that a misrepresentation may also consist
of the concealment or nondisclosure of a material fact when there is a duty to disclose. Custom
Leasing, Inc. v. Tex. Bank & Trust Co., 516 S.W.2d 138, 142 (Tex. 1974); Reynolds, 188 S.W.3d
at 270. The duty to disclose arises when one party knows that the other party is ignorant of the true
facts and does not have an equal opportunity to discover the truth. Reynolds, 188 S.W.3d at 270. 
Whether a duty to disclose exists is a question of law. Bradford v. Vento, 48 S.W.3d 749, 755 (Tex.
2001). However, that question of law is dependent on the application of facts, and in the context of
a no-evidence summary judgment, we are simply looking to see first if there is any evidence of facts
that might support the imposition of such a duty. In the context of a traditional motion, we look to
see if Dealer conclusively proved that it had no such duty.

 Several courts of appeals have held that a general duty to disclose information may arise in
an arm's-length business transaction when a party makes a partial disclosure that, although true,
conveys a false impression. See, e.g., McCarthy v. Wani Venture, A.S., 251 S.W.3d 573, 585 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). (8)

 As astutely pointed out by the Fort Worth court, "fraud is usually not discernible by direct
evidence and is usually so covert or attendant with such attempts at concealment as to be incapable
of proof other than by circumstantial evidence." W.L. Lindemann Operating Co. v. Strange, 256
S.W.3d 766, 776 (Tex. App.--Fort Worth 2008, no pet.); see Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 435 (Tex. 1986). Motive, past conduct, and related wrongful acts are thus factors to
be considered. Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 707 (Tex. App.--Fort
Worth 2006, pet. denied).

 The only real question here is whether Dealer had a duty to speak and nonetheless stayed
silent.

 The Texas Finance Code explicitly provides that neither a dealer nor a third-party lender has
the obligation to disclose to the buyer the terms under which a dealer resells the consumer contract
to the lender. See Tex. Fin. Code Ann. § 348.301 (Vernon 2006). Section 348.301 effectively
insulates Dealer from any liability for failure to affirmatively disclose the terms of the assignment
of contract to the third-party lender. That information, which Dealer was statutorily relieved from
an obligation to disclose to Feagins, included the profit of $556.20. For that reason, summary
judgment was proper on any cause of action springing from Dealer's nondisclosure of that profit.

 We affirm the summary judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 4, 2009

Date Decided: February 5, 2009
1. Our earlier opinion in this case, issued November 26, 2008, is withdrawn and this opinion
is substituted in its place as the opinion of this Court.
2. This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas
Supreme Court's docket equalization program. We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. See
Tex. R. App. P. 41.3.
3. The separate corporation Jack O'Diamonds, Inc., was nonsuited from this case. It appears
that the proper party is the corporation Tyler Lincoln-Mercury, Inc., d/b/a Jack O'Diamonds.
4. Dealer's motion for summary judgment is not a model of clarity. Counsel are cautioned to
always carefully delineate no-evidence and traditional motions for summary judgment, preferably
into two separate motions. The response is equally imprecise, and briefing from Feagins merges
arguments on multiple theories of recovery together into a single continuous discussion which is
often difficult to parse. That difficulty also appears in Feagins' appellate brief. We have attempted
to separate and analyze the various issues.
5. Thus, a statement is not fraudulent unless the maker knew it was false when he or she made
it or made it recklessly without knowledge of the truth. DeSantis v. Wackenhut Corp., 793 S.W.2d
670, 688 (Tex. 1990).
6. The "Dealer's Inventory Tax" has been a sticky problem since its inception, since motor
vehicle dealers, on which the tax was levied, began passing the tax through to their customers and
calling it a "tax." This Court discussed those actions in Alford Chevrolet-Geo v. Jones, 91 S.W.3d
396, 404 (Tex. App.--Texarkana 2002, pet. denied).
7. In the no-evidence portion of its motion for summary judgment, Dealer listed the elements
of fraud, and first stated without elaboration that there was no evidence of any element of the cause
of action. This statement is inadequate to meet the particularity requirements of a motion for
summary judgment. See Tex. R. Civ. P. 166a(i). Dealer further stated that "plaintiff cannot prove"
a false representation, reliance on the representation, or injury resulting therefrom. This misstates
the requirements of a no-evidence summary judgment. The question is not whether Feagins can
prove his case, the question is whether there is any summary-judgment evidence of specific elements. 
This portion of the motion does, however, provide the specificity required by the rule.
8. Citizens Nat'l Bank v. Allen Rae Invs., 142 S.W.3d 459, 476-77 (Tex. App.--Fort Worth
2004, no pet.); Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, 
writ denied); Ralston Purina Co. v. McKendrick, 850 S.W.2d 629, 636 (Tex. App.--San Antonio
1993, writ denied).