

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00183-CV

All Known, Unknown, and Known but Unfound Heirs, Executors, Administrators, Successors,
Assigns, and Personal Representatives of Louis and Eliza **ECKFORD**, et al.,
Appellants

v.

Lou Eda **KORTH** Stubbs Nixon, FRJK Legacy Family Limited Partnership, Ellen Ann Korth
Vickers, John Frederick Vickers, Michael Steven Vickers, Ellen Ann Vickers, and William
Korth Vickers,
Appellees

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 12-09-00188-CVK
Honorable Russell Wilson, Judge Presiding

Opinion by:     Velia J. Meza, Justice
Concurring Opinion by: Lori I. Valenzuela, Justice

Sitting:        Lori I. Valenzuela, Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: October 8, 2025

AFFIRMED

Two families with deep roots in Karnes County continue their legal battle over a 147.5-acre property. The Eckfords assert they own a 17/36 interest in that property while the Korths claim to own it outright. After more than a decade of litigation, a jury returned a verdict vindicating the Eckfords' position. The trial court subsequently signed a judgment against that verdict—in

favor of the Korths. The Eckfords now appeal seeking reinstatement of the jury's verdict. Because the evidence conclusively establishes that the Korths acquired title by limitations, contrary to the verdict, we affirm the trial court's judgment.

## BACKGROUND[1]

Louis Eckford died without a will in 1896. Under intestacy law at the time,[2] one-half of any real property within the community estate passed to his wife, Eliza, and the remaining half passed to the couple's nine surviving children. The estate—including the 147.5-acre property at issue—thus became jointly owned by Ms. Eckford and the children: an undivided one-half interest for Ms. Eckford and an undivided 1/18 interest for each child. When one child, Theodore Eckford, died in 1912, his interest was split equally among his surviving family, thus increasing Ms. Eckford's interest to 19/36 and the surviving children's interest to a collective 17/36.[3, 4]

Ms. Eckford died in 1925. During the probate of her will, the court-appointed administrator executed a deed purporting to convey the 147.5-acre property—in fee simple—to Fritz Korth. That deed was supported by official decree of the probate court and was duly recorded in 1939. Since that conveyance, Fritz Korth and his successors (collectively, the Korths) have occupied the land.

Around seven decades later, while negotiating an oil and gas lease with the Korths, Burlington Resources Oil & Gas Company and West 17th Resources, LLC discovered the

---

[1] We endeavor to summarize the background as it appears from the record before us. We are mindful, based on attorney argument, that this dispute arose in circumstances marked by hardship: Louis and Eliza Eckford were formerly enslaved individuals and lived during a period of legally mandated racial segregation, realities which likely shaped the parties' interactions in that era. Nevertheless, our review is governed by the evidentiary record; attorney argument does not constitute evidence we may consider. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). And the Eckfords have not explained how this historical context affects the legal standards at issue. *Cf.* Thomas W. Merrill, *Property Rules, Liability Rules, and Adverse Possession*, 79 Nw. U. L. Rev. 1122, 1128–31 (1985) (describing traditional justifications for adverse possession).

[2] TEX. REV. CIV. STATS. art. 1696 (1895) (Act approved March 30, 1887, 20th Leg., R.S., ch. 96, §1, 1887 Tex. Gen. Laws 76, *reprinted in* 9 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 874 (Austin, Gammel Book Co. 1898)).

[3] TEX. REV. CIV. STATS. art. 2468 (1911) (Act approved March 25, 1887, 20th Leg., R.S., ch. 70, §1, 1887 Tex. Gen. Laws 49, *reprinted in* 9 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 847 (Austin, Gammel Book Co. 1898)).

[4] For simplicity, we refer to the children's interest as an undivided one-half interest.

Eckfords' apparent interest. Both companies sought out and entered into leases with the Eckfords. In 2012, Burlington petitioned for a receivership to represent the interest of the Eckford heirs who could not be located. The Korths intervened, asserting they had adversely possessed the Eckfords' interest.

The Korths obtained summary judgment based on their adverse possession arguments. We reversed that ruling, holding the Korths failed to prove ouster as a matter of law and remanding for further proceedings. *Hardaway v. Nixon*, 544 S.W.3d 402, 413 (Tex. App.—San Antonio 2017, pet. denied).

On remand, the case proceeded to a six-day jury trial. The testimony centered on contrasting narratives: the Korths' multi-generational possession of the land, including continuous maintenance and payment of taxes, contrasted with the complete absence of possession or any recorded interest by the Eckford heirs. Each side presented evidence—consisting of deeds, probate records, and testimony from family members, ranch hands, and title experts. The parties stipulated to the following facts, as reflected in the jury charge:

- In 1896, Eliza Eckford acquired an undivided one-half interest in the property and Louis Eckford's children acquired an undivided one-half interest.

- From 1939 until 2012, the Eckfords never entered the property, never attempted entry, never paid property taxes, never listed the tract as an asset in any written document, never paid for improvements, and never contributed money for upkeep.

The jury returned a verdict favorable to the Eckfords on every issue submitted.[5] The trial court initially entered judgment on that verdict. Twenty-nine days later, the Korths filed a post-judgment motion seeking modification and a judgment non obstante veredicto (JNOV). *See* TEX.

---

[5] The jury was charged on three theories of adverse possession (the ten-year statute and both 25-year statutes), the common law presumed grant doctrine, and the dominion statute.

R. CIV. P. 301 (authorizing JNOV if a directed verdict would have been proper). In that motion, the Korths argued that, contrary to the jury's verdict, they conclusively proved ouster, adverse possession, presumed grant, and that they were entitled to judgment based on the dominion statute. After a hearing, the trial court granted the motion and modified its judgment to grant the Korths full ownership of the 147.5-acre tract. The court based its ruling on the dominion statute alone. *See* TEX. CIV. PRAC. & REM. CODE § 16.029(a).

The Eckfords now appeal that modified judgment. The Korths raise cross points arguing JNOV was proper under the alternative theories presented in their motion. Thus, this court must determine whether the dominion statute applies and, if so, whether the Korths are entitled to judgment as a matter of law.

We hold that the dominion statute—on its own—cannot support judgment as a matter of law. However, because we sustain the cross points relating to adverse possession, we nonetheless affirm the trial court's judgment. *See* TEX. R. APP. P. 38.2(b)

## DISCUSSION

The Korths brought a trespass to try to title action against the Eckfords. *See* TEX. PROP. CODE § 22.001. Such an action is "a procedure by which rival claims to title or right of possession may be adjudicated." *Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983). The Korths contend they possess superior title to the Eckfords through title by limitations,[6] by the common law presumed grant doctrine,[7] and by the dominion statute.[8]

The parties agree that Louis Eckford's heirs, collectively, and his wife, Eliza Eckford, each acquired an undivided one-half interest in the property in 1896, creating a tenancy in common. *See*

---

[6] *See* TEX. CIV. PRAC. & REM. CODE § 16.030(a).
[7] *See Van Dyke v. Navigator Group*, 668 S.W.3d 353, 366 (Tex. 2023).
[8] *See* TEX. CIV. PRAC. & REM. CODE § 16.029.

*generally* 2 TIFFANY REAL PROP. § 426 (3d ed. 2020) (covering cotenancy). They also agree that Ms. Eckford's interest was conveyed to Fritz Korth by the 1939 administrator's deed. The parties' theories diverge from here.

Under the Korths' view, Ms. Eckford owned either an undivided one-half interest or a fee simple interest at the time of the 1939 conveyance. As evidence she owned a fee simple interest, the Korths point to a deed of trust executed by Ms. Eckford listing the full property—not half—as collateral for a loan obtained from Fritz Korth. Thus, they argue, there must have been a prior conveyance from the heirs to Ms. Eckford, the record of which has been lost. Alternatively, even if Ms. Eckford owned one half of the property, the Korths contend they obtained the heirs' interest through adverse possession, presumed grant, or the dominion statute.

The Eckfords accept the same factual foundation but deny their interest was ever conveyed or adversely possessed. Instead, they argue the administrator's 1939 conveyance to Fritz Korth was limited to Eliza Eckford's one-half interest, leaving them as cotenants ever since.

## 1   Standard of Review

We review a trial court judgment without or against a jury verdict under a no-evidence legal sufficiency standard, while questions of law, including statutory construction, we review de novo. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994).

This review is identical to that used for summary judgments and directed verdicts. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We uphold a jury's finding if more than a scintilla of competent evidence supports it. *Tanner*, 289 S.W.3d at 830. The evidence is viewed in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). And "[t]he final test for legal sufficiency

must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller,* 168 S.W.3d at 827. Thus, to affirm a JNOV, a movant must establish "the evidence conclusively proved" their entitlement to judgment "and that no reasonable jury was free to think otherwise." *Tanner*, 289 S.W.3d at 830.

When a trial court specifies the ground upon which it grants a JNOV, as it did here, an appellant need only challenge that ground. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 795 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). However, an appellee may present cross points providing alternative reasons for affirming the JNOV—provided those reasons were presented to the trial court in the JNOV motion. TEX. R. CIV. P. 324(c); TEX. R. APP. P. 38.2(b); *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 537–38 (Tex. 2018) (discussing cross point procedure).

## 2    Dominion Statute

The trial court granted JNOV based upon the dominion statute. *See* TEX. CIV. PRAC. & REM. CODE § 16.029. The Eckfords argue this was error for two reasons: first, the statute creates a presumption of fact rather than law, allowing them to rebut the presumption; second, the Korths were not entitled to the presumption because they failed to assert a claim.

### 2.1    Statutory Construction

In a suit involving title to real property that is not claimed by this state, it is prima facie evidence that title has passed from the person holding apparent record title to an opposing party if:

> (1) for one or more years during the 25 years preceding the filing of the suit, the person holding apparent record title did not exercise dominion over or pay taxes on the property; and

> (2) during that period, the opposing party has openly exercised dominion over and has asserted a claim to the land and has paid the property taxes timely for as long as 25 years.

TEX. CIV. PRAC. & REM. CODE § 16.029(a).

When originally enacted, the Legislature included a statement explaining the purpose of the statute: "in many cases deeds have been lost and no proof can be made of the manner by which such title passed because of the long lapse of time." Act of March 17, 1930, 41st Leg., 5th C.S., ch. 30, § 3, 1930 Tex. Gen. Laws 162, 162. When amended in 1931 to reduce the statutory period for payment of taxes from 50 to 25 years, the Legislature provided a second statement of purpose: "many titles to valuable lands are clouded by apparent adverse titles in counties where the deed records have been destroyed by fire and proof of such titles is difficult and many such values will likely vanish during the pendency of litigation and making proof." Act of May 21, 1931, 42nd Leg., R.S., ch. 169, § 3, 1931 Tex. Gen. Laws 288, 289.[9]

Since its original enactment 95 years ago, the Texas Supreme Court has never construed the dominion statute. And we have addressed the provision only once, holding that an appellant failed to pay taxes for the statutory period. *See Pagel v. Pumphrey*, 204 S.W.2d 58, 65 (Tex. App.—San Antonio 1947, writ ref'd n.r.e.). No court has ever addressed the specific language at issue here.

This case therefore presents a question of first impression: what does the phrase "prima facie evidence that the title to the property has passed"[10] mean? We construe undefined statutory language according to common usage. *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 106–07

---

[9] The Legislature's stated policy is thus nearly identical to the justification given by Texas courts for the common law presumed grant doctrine. As stated by the Galveston Court of Appeals in 1910: the "destruction of the records in so many of the counties of this state, coupled with the carelessness, well nigh universal at an earlier period of our history . . . require[s], in our opinion, a liberal application of [the presumed grant doctrine] for the protection of titles." *Pratt v. Townsend*, 125 S.W. 111, 114–15 (Tex. Civ. App.—Galveston 1910, no writ).

[10] When the dominion statute was codified in 1985, the phrase "prima facie proof that the title thereto had passed to such persons so exercising dominion over, claiming and paying taxes thereon," was changed to "prima facie evidence that the title to the property has passed from the person holding apparent record title to an opposing party." Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3255 (codified at TEX. CIV. PRAC. & REM. CODE § 16.029). However, the Act specifically provided that "no substantive change in the law is intended." *Id.* § 10, 1985 Tex. Gen. Laws at 3322 (citing TEX. CONST. art. 3, § 43).

(Tex. 2021). We also "presume the Legislature is aware of relevant case law when it enacts or modifies statutes." *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012); *see also Phillips v. Bramlett*, 407 S.W.2d 229, 241 (Tex. 2013) (construing the word "judgment" in section 304.003 of the Texas Finance Code).

We therefore construe the statute in light of the traditional legal meaning of the phrase. Prima facie evidence may refer to "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (internal quotation omitted). Alternatively, it may refer to "the establishment of a legally mandatory, rebuttable presumption." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 n.7 (1981) (discussing *McDonnell Douglas* framework). Neither meaning justifies judgment as a matter of law.

### 2.2 Usage of Presumptions in Summary Proceedings

At its strongest, the dominion statute allows a presumption that title was conveyed from the record titleholder to the party paying taxes. Unlike the common law presumed grant doctrine, which may become unrebuttable in certain circumstances,[11] a prima facie case may always be rebutted and is thus a true presumption of fact. *Valley Forge Life Ins. Co. v. Republic Nat. Life Ins. Co.*, 579 S.W.2d 271, 275 (Tex. App.—Dallas 1978, writ ref'd n.r.e.) ("A true presumption disappears when rebutted and no longer has weight as evidence.") (citing *Prudential Ins. Co. v. Krayer*, 366 S.W.2d 779, 780 (Tex. 1963)).

---

[11] While the common law presumed grant doctrine "is not founded on a belief that a grant has actually been made," *Fletcher v. Fuller*, 120 U.S. 534, 547 (1887), the doctrine appears to have been received in Texas as a "presumption of fact," *Taylor v. Watkins*, 26 Tex. 688, 698–99 (1863); *Sulphen v. Norris*, 44 Tex. 204, 242 (1875), which may eventually become conclusively established—and thus become a presumption of law—with the passage of time, *Van Dyke*, 668 S.W.3d at 366, 368.

The Texas Supreme Court has repeatedly recognized that presumptions of fact cannot shift the burden of proof in summary judgment proceedings. *Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017); *Scott & White Mem'l Hosp. v. Thompson*, 681 S.W.3d 758, 761 n.4 (Tex. 2023).[12] Rather, the evidence used to prove the presumption may be considered to determine whether a movant has "established his entitlement to a summary judgment by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021) (cleaned up).

JNOV, like summary judgment, requires that the evidence conclusively establish a movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Therefore, it follows that any presumption afforded by the dominion statute—standing alone—cannot entitle the Korths to judgment as a matter of law, regardless of whether the presumption was rebutted. *Cf. Chavez*, 520 S.W.3d at 900 ("The presumptions and burden of proof for an ordinary or conventional trial are immaterial to the burden that a movant for summary judgment must bear." (quoting *Missouri-Kansas-Texas R.R. Co. v. City of Dallas*, 623 S.W.2d 296, 298 (Tex. 1981))) *and Draughon*, 631 S.W.3d at 88 ("[T]he non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." (quoting *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979))).

The dominion statute is thus an improper basis for JNOV. We sustain the Eckfords' appellate issues. Because the Korths have raised cross points, we must consider them to determine

---

[12] *See also UpCurve Energy Partners, LLC v. Muench*, 661 S.W.3d 907, 920–21 (Tex. App.—El Paso 2023, no pet.) (discussing community property and separate property presumptions in light of *Chavez* and *Draughon*).

whether the JNOV was otherwise supportable by the grounds stated in the Korths' motion. TEX. R. APP. P. 38.2(b); TEX. R. CIV. P. 324(c).

## 3    Adverse Possession

The Korths' first cross point is based on adverse possession. Adverse possession provides for the acquisition of title to land in the form of a limitations defense.[13] A trespass action based upon limitations ordinarily accrues "at the instant [possession is] taken under the circumstances specified in the statute." *Horton v. Crawford,* 10 Tex. 382, 390–91 (1853); *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 73 (Tex. 2011) (determining action accrued when "adverse possession began"). When adverse possession is established, "the person who holds the property in peaceable and adverse possession has full title, precluding all claims." TEX. CIV. PRAC. & REM. CODE § 16.030(a).

Texas allows successive adverse possessors to tack their time in possession to their predecessors' time provided there is privity of estate. *Id*. § 16.023; *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 902 n.6 (Tex. 1976) (citing *Hutto v. Cook*, 164 S.W.2d 513 (Tex. 1942)). Because adverse possession is normally a question of fact, only in rare instances is a court justified in holding that adverse possession has been established as a matter of law. *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex. 1985).

### 3.1    Ouster

When adverse possession is alleged between cotenants, the limitations period begins when the cotenancy is repudiated and notice of that repudiation is "brought home" to the other cotenant. *See Todd v. Bruner*, 365 S.W.2d 155, 159–61 (Tex. 1963) (discussing ouster requirement). Notice

---

[13] "Statutes of limitations require someone with a claim to assert that claim within a specified period of time, and the statutes of limitations dealing with real property are no different." *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 199 (Tex. 2003); *see also Rife v. Kerr*, 513 S.W.3d 601, 616 (Tex. App.—San Antonio 2016, pet. denied) (holding claimant raised fact issue precluding summary judgment as to ouster element of adverse possession claim).

of repudiation, often termed ouster or disseizen, is shown by "unmistakable and hostile acts that would put other cotenants on notice of [an] intent to oust them from the leasehold." *Todd*, 365 S.W.2d at 157; *see also Portis v. Hill*, 3 Tex. 273, 279 (1848) ("[T]o constitute a disseizin and adverse possession in [the case of a cotenancy], there must be, in the language of the books, an *actual ouster*."). Once ouster occurs, the possession may then be considered adverse. *Tex-Wis Co.*, 534 S.W.2d at 899.

The Korths argue ouster was conclusively proven by the 1939 administrator's deed and corresponding judicial decree which purport to convey the entire tract—in fee simple—to Fritz Korth. The Eckfords, however, characterize the administrator's deed as a quitclaim deed and identify occasions when the Korths acknowledged their interest.[14] We hold the evidence conclusively establishes ouster.

Texas courts have consistently recognized a presumption of law that arises when an act of repudiation is so overt and notorious that no further action is necessary to provide notice to a cotenant. *See, e.g., Republic Prod. Co. v. Lee*, 121 S.W.2d 973, 981 (Tex. 1938) ("If the co-tenant is ignorant of his rights or neglects them, he must bear the consequences."). Once constructive notice is shown, it is immaterial whether the excluded cotenant had actual notice of the repudiation.

Several cases illustrate how Texas courts have applied the ouster doctrine to similar facts. In *Gonzalez v. Estate of Ramirez*, we rejected the argument that a partition judgment could not satisfy the notice requirement simply because the excluded cotenant was not a party to the partition

---

[14] The Eckfords additionally argue our decision in *Hardaway v. Nixon* requires we reverse the JNOV. This argument is unavailing because our holding in *Hardaway* was expressly limited to whether long-continued possession combined with nonclaim—without more—could conclusively establish constructive ouster. *See Hardaway v. Nixon*, 544 S.W.3d at 412 ("[T]he Korth Heirs neither asserted nor established that they took 'unequivocal, unmistakable, and hostile acts'—other than mere possession and lack of a claim—'to disseize' the Eckford Heirs, their cotenants."). Our holding was premised on the particular language contained in the Korth's motion for summary judgment. *Id*. Thus, *Hardaway* is distinguishable because the Korths now point to the 1939 administrator's deed and accompanying judicial decree as evidence of ouster. *See Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375, 381 (5th Cir. 2021) (distinguishing *Hardaway* on similar grounds).

proceedings. No. 04-17-00223-CV, 2018 WL 4903083, at \*6 (Tex. App.—San Antonio Oct. 10, 2018, pet. denied) (mem. op.). We held that the judgment, which had the effect of excluding a cotenant, was "sufficiently notorious" to conclusively prove ouster, even without evidence the cotenant actually knew of the judgment. *Id*.

Similarly, in *Parr v. Ratisseau*, we concluded that a deed conveying a fee simple interest in part of a larger tract owned by several cotenants, combined with open possession, constituted ouster without requiring actual notice. 236 S.W.2d 503, 506 (Tex. App.—San Antonio 1951, writ ref'd n.r.e.).

And in *King Ranch v. Chapman*, the Texas Supreme Court held that a consent decree constituted a "notorious act of ouster" where it repudiated a cotenant's title and that of her heirs. 118 S.W.3d 742, 757 (Tex. 2003) (quoting *Cryer v. Andrews*, 11 Tex. 170, 180 (1853)). Because the facts were undisputed, the court concluded that ouster occurred "[a]s a matter of law" no later than "the date the court entered the [consent decree]." *Id*.

Here, the 1939 administrator's deed purported to convey to Fritz Korth a fee simple interest in the entire 147.5-acre property. *See Hermann v. Likens*, 90 Tex. 448, 453 (1897) (holding administrator's deed legally conveys property so long as it describes the property with sufficient certainty). The deed fully described the metes and bounds of the property and was duly recorded with the county clerk. *See Gibbs v. Barkley*, 242 S.W. 462, 464–66 (Tex. Comm'n Op. App. 1922, holding approved) (holding that deed purported to convey fee simple interest where property was described by "metes and bounds" without limiting language, despite fact that grantor was cotenant without authority to convey such interest). It also incorporated the corresponding probate decree, which was explicitly laid out in the deed itself, and referenced the property conveyed as "being the same land described in the Deed of Trust from Eliza Eckford to J.W. Ruckman, Trustee, dated

the 1st day of November, 1923, recorded in Book T, Deed of Trust Record of Karnes County, Texas, on page 405-7 thereof." That 1923 deed of trust similarly described a fee simple interest in the property at issue.

These undisputed facts establish hostility to the cotenancy. Eliza Eckford owned an undivided one-half interest in the property—not a fee simple interest. Because she could not convey more than what she owned,[15] the 1939 conveyance of a fee simple interest in the entire property was unmistakably inconsistent with—and hostile to—the heirs' interest. *See Marshall*, 342 S.W.3d at 72 (noting that hostility requirement is not dependent on an "intent to dispossess" but rather on an "intent to claim the land").

The record also show the Korths occasionally acknowledged their shared cotenancy. For example, Fritz Korth's estate inventory listed the property as jointly owned by the Eckfords. But such acknowledgments do not destroy repudiation or create a fact issue. At most, acknowledgements of the Eckfords' interest indicate that Fritz Korth's heirs were unsure whether he truly owned the property in fee simple. *See JJ&A P'ship Rental, LP v. J&D Partners, LTD*, No. 09-23-00245-CV, 2025 WL 2164992, at *18 (Tex. App.—Beaumont July 31, 2025, no pet.) (mem. op.) (rejecting a similar argument). Following the 1939 repudiation, the Eckfords were on notice that the Korths' possession was hostile regardless of whether the Korths believed that they owned the property outright or adversely possessed the Eckfords' interest. *Marshall*, 342 S.W.3d at 72. And this deed was incorporated into a probate decree.

Like the judicial acts referenced in *Gonzales*, *Parr*, and *King Ranch*, the administrator's deed combined with the probate decree are "sufficiently notorious" to prove ouster. *Gonzalez*,

---

[15] TEX. REV. CIV. STATS. art. 1290 (1936) (Act approved February 5, 1840, 4th Cong., R.S., § 14, 1840 Repub. Tex. Laws 153, 156–57, *reprinted in* 2 H.P.N. Gammel, *The Laws of Texas 1822-1987*, at 327, 330–31 (Austin, Gammel Book Co. 1898), *repealed and recodified by* Act of May 26, 1983, 68th Leg., R.S., ch. 576, §§ 1, 6, 1983 Tex. Gen. Laws 3475, 3480, 3729 (codified at TEX. PROP. CODE § 5.003)).

2018 WL 4903083, at *6. Because the facts are undisputed, these documents are sufficient to prove constructive ouster as a matter of law. *King Ranch*, 118 S.W.3d at 757.

Moreover, the evidence conclusively shows that the Korths exclusively possessed the property for the 73 years preceding this suit—far longer than any applicable limitations period. *See Tex-Wis Co.*, 534 S.W.2d at 902 (holding "24 years in excess of the 10-year statutory period" constituted long-continued possession sufficient for ouster). Such long-continued possession under a recorded deed is sufficient to give constructive notice of repudiation. *Parr*, 236 S.W.2d at 506; *see also Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375, 381 (5th Cir. 2021) (applying *Parr* and holding that long-continued possession combined with a recorded deed describing a fee simple interest "g[a]ve constructive notice of hostility to cotenants and [effected] an ouster" as a matter of law). Additionally, the Eckfords stipulated that they never attempted to enter the land, paid property taxes, listed the tract as an asset in any written document, paid for improvements, nor contributed sums of money for upkeep during the period of the Korths' possession. These facts are a "strong circumstance tending to authorize an inference of notice of the adverse possession." *Moore v. Knight*, 94 S.W.2d 1137, 1139–40 (Tex. 1936).

Our approach here is consistent with how Texas and American courts have analyzed ouster for at least 200 years. *See, e.g.*, *Alexander v. Kennedy*, 19 Tex. 488, 496 (1857) (observing that ouster may be proven by "a purchaser from a tenant in common entering under a recorded deed, or notoriously claiming the whole of the property") *and Prescott v. Nevers*, 19 F.Cas. 1286, 1288 (No. 11,390) (CC Me. 1827) (Story, J.) (ouster occurred as to cotenants where Nevers obtained deed from tax sale of one cotenant purporting to convey the entire property, even though tax sale was illegal, and where Nevers cut down grass and trees on the property); *see generally*

W.O.H., *Tenancy in Common-Conveyance of Whole-Adverse Possession*, 12 Tex. L. Rev. 106 (1933).

In short, the record conclusively establishes constructive ouster.

### 3.2    Statutory Requirements

Having determined ouster occurred, we proceed to the statutory elements of adverse possession. There are three main requirements: possession must be (1) adverse, (2) peaceable, and (3) continuous for the applicable limitations period. "Adverse" possession is shown by "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with [and] hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). And "peaceable" possession is shown by "possession of real property that is continuous [and] not interrupted by an adverse suit to recover the property." *Id*. § 16.021(3).

The applicable limitations period differs based on the possessor's conduct: the shorter the limitations period, the stricter the requirements. If a possessor is claiming under "title or color of title," they must possess the land for three years before a trespass action is barred. *Id*. § 16.024. If a possessor "cultivates, uses, or enjoys the property" and pays "applicable taxes on the property" while claiming "the property under a duly registered deed," the period is five years. *Id*. § 16.025. If a possessor merely "cultivates, uses, or enjoys the property," the period is ten years. *Id*. § 16.026. And if the possessor satisfies the elements of the ten-year statute for a total of twenty-five years, a trespass action is barred irrespective of any legal disability.[16] *Id*. § 16.027. Finally, if a possessor holds the property in "good faith" and under a recorded deed "purporting to convey the property,"

---

[16] Otherwise, if a person entitled to sue for the recovery of real property is under a legal disability at the time the adverse possession commences, the time of the disability is not included when calculating the limitations period. TEX. CIV. PRAC. & REM. CODE § 16.022(b).

regardless of legal disability or whether the deed is void, the period is twenty-five years. *Id*. § 16.028.

The Korths assert title by limitations under the five-, ten-, and both twenty-five-year statutes. The Eckfords argue the evidence fails to show hostility, arguing any possession was consistent with—and not hostile to—their cotenancy. *See id*. §§ 16.026–.027.

We have already held that the Korths conclusively proved ouster, thus satisfying the hostility element. *Todd*, 365 S.W.2d at 157; *Tex-Wis Co.*, 534 S.W.2d at 899. And, focusing on the remaining elements of the ten- and first twenty-five-year statute: the record shows the Korths maintained barbed-wire fencing with locked gates surrounding the property at issue along with adjoining property owned by them. Furthermore, the Korths have hunted, maintained cattle, developed the land for grazing, and leased grazing and mineral rights continuously for at least twenty-five years preceding this suit. And since 1939, the Korths have held the tracts at issue under a series of recorded deeds, each containing language inconsistent with the Eckfords' interest.

There is no genuine issue of material fact regarding the Korths' actual, visible, hostile, and peaceable possession of the property at issue for three-quarters of a century. Accordingly, the record establishes adverse possession as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.026–.027. To hold otherwise would frustrate the purpose of the adverse possession statutes. *See King Ranch*, 118 S.W.3d at 757 (discussing purpose of adverse possession and holding that open, notorious, and exclusive use "for over a hundred years" established title by limitations as a matter of law). "Without such laws, time, instead of lending a helping hand to cure apparent defects and remove opposing claims, will only be the means and afford a ready opportunity of rendering titles less secure against mistakes, frauds, and perjuries. The older the title the less secure it becomes against such attacks." *Id*. (quoting *Howard v. Colquhoun*, 28 Tex. 134, 145 (1866)) (cleaned up).

The Korths' first cross point is sustained. Because it is dispositive, we need not address the remaining cross point. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

The evidence is conclusive and contrary to the jury's verdict. We affirm the trial court's judgment against that verdict.

Velia J. Meza, Justice